## Town of East Hartford vs. The American National Bank.

*P*, as treasurer of the plaintiff town, made sundry notes as treasurer without authority from the town, which were discounted by the defendant bank and the avails placed to his credit as treasurer of the town. Funds properly in his hands as treasurer were from time to time deposited in the same account and finally the notes made by him were, after sundry renewals, paid by checks drawn by him as treasurer. He afterwards became a defaulter and fled. The money drawn out by him as treasurer and used to pay the notes, would have made good his defalcation. The bank discounted the notes in good faith supposing that he had authority to make them and that the proceeds were used for the benefit of the town, but in fact a large amount of the money drawn out on his checks as treasurer was used for his own purposes. He was at the time in good repute for integrity. Held—

1.  That the bank must be held to have known that *P* had no power as treasurer to make the notes in the name of the town, and no power without special authority from the town, as to which it was its duty to inquire.

2.  That the notes must therefore be treated as the private notes of *P*, and the loans as made to him individually.

3.  That when *P* as treasurer drew out the town money to pay the notes, he was doing what the bank must be taken to have known that he had no right to do, and that the bank could not retain the money against the demand of the town.

ASSUMPSIT, to recover of the defendant bank money deposited with it by the treasurer of the town; brought to the Superior Court in Hartford County. The following facts were found by the court:—

Leonard T. Pitkin was elected and qualified as treasurer of the plaintiff town in October, 1872, and was annually thereafter re-elected and continued in the office until the 9th day of September, 1878, when he was removed and his successor appointed, he having previously absconded, a defaulter to the town in the sum of $3,878.92. This sum is the difference between receipts and payments by Pitkin, after the last audit of his accounts as treasurer. Pitkin gave a bond at the time of his first appointment as treasurer, which expired the first year. No other bond was afterwards given.

On the 4th day of November, 1872, Pitkin opened an account with the defendant bank as treasurer of the town of East Hartford, and deposited therein the money received by him from his predecessor, to the credit of "L. T. Pitkin, Treasurer." This account was continued during his term of office and was closed on the 31st of July, 1878, after he had absconded. During this time he also had two other accounts in the bank in the names of "L. T. Pitkin, Executor," and "L. T. Pitkin." On the 27th of November, 1872, Pitkin began drawing on the treasurer's account for his private purposes. The amount so drawn was $25,314.67. Seven of the checks so drawn by him, payable to himself, amounting to $7,332.58, were upon the same day they were drawn deposited to his individual credit in the bank. Checks drawn by him as treasurer, and payable to him as executor, were at the same time placed to the credit of his executor's account in the bank. Except in the case of a check of $600 dated October 14th, 1876, payable to him as executor, which was made merely to correct an error, all the moneys thus transferred or taken from the bank upon his checks as treasurer, were the property of the town and were thereby misappropriated.

There were sundry checks drawn upon Pitkin's individual

account and upon his account as executor, and payable to him as treasurer, which were deposited to the credit of his treasurer's account in the bank, from time to time, during all the period covered by his treasurer's account; whereby Pitkin kept his account as treasurer good until December, 1875, although for much of the time it did not represent the amount which would have stood to his credit had it not been for such misuse of the funds of the town.

On December 7th, 1875, his account as treasurer was overdrawn for the first time, and continued so overdrawn until December 31st, 1875. The overdraft on December 30th, 1875, was $3,209.80. The attention of the president and officers of the bank was directed to this overdraft and the condition of Pitkin's account as treasurer, and on the 31st of December, 1875, the bank, preferring to lend upon a note rather than in the form of an overdraft, arranged through its president with him to make a note as treasurer for the sum of $4,000, payable to his order, and endorsed by him only, which note was discounted by the bank, and the avails placed to his credit as treasurer. The overdraft which without this discount would have amounted on that day to $3,679.20, was thus apparently extinguished, and a balance of $225.14 was left to his credit as treasurer. This note was paid on the 2d of May, 1876, by a check drawn by him upon the treasurer's account.

On the 12th of July, 1876, Pitkin's account as treasurer was overdrawn $1,219, and on the 13th of July, 1876, a note for $3,000, made by him as treasurer, payable to and endorsed by him only, was discounted, and the avails placed to the credit of his account as treasurer, and the overdraft apparently extinguished. This note became due November 20th, 1876, and was renewed and became due again the 1st of December, 1876, and was again renewed and became due January 18th, 1877. On the 25th day of August, 1876, Pitkin made another note, as treasurer, for $2,000, of the same tenor, which was discounted, and the avails were placed to his credit as treasurer. This note became due December 28th, 1876, and was renewed and again became

due January 18th, 1877. On that day a new note for $5,000, made by Pitkin as treasurer, was discounted by the bank, and the avails placed to the credit of his treasurer's account, and the notes for $3,000 and $2,000 respectively, were paid from that account by a treasurer's check. This $5,000 note became due March 21st, 1877, and was renewed and became due again April 24th, 1877, when it was paid by a check upon the treasurer's account, and a new note for $4,000, of Pitkin treasurer, was discounted, and the avails placed to the credit of his treasurer's account, thus practically renewing $4,000 of the $5,000 note. This note became due August 27th, 1877, and was renewed and became due again December 27th, 1877, when it was again renewed for the last time, and was finally paid from the funds standing to the credit of Pitkin treasurer in the bank, on the 2d of May, 1878, by a treasurer's check.

On the 9th of October, 1876, another note was made by Pitkin, as treasurer, for $4,000, and the avails thereof credited to his treasurer's account, which, previous to such credit, was overdrawn $500.31. This note became due February 12th, 1877, and was then renewed and became due again April 15th, 1877, and was then paid by a treasurer's check.

On the 18th of December, 1877, another note made by Pitkin, as treasurer, for $2,000, was discounted by the bank, and the avails thereof placed to the credit of his treasurer's account. This note became due April 20th, 1878, and was paid from the treasurer's account, by a treasurer's check.

On the 22d of January, 1878, Pitkin made another note, as treasurer, for $500, which was discounted by the bank and the avails credited to his treasurer's account. This note was paid April 10th, 1878, by a treasurer's check on the treasurer's account. On the 21st of January, 1878, the treasurer's account was overdrawn $1,034.65, which overdraft was made up in part on the 22d of January, 1878, by the avails of the $500 note.

All the foregoing notes were made without the knowledge or consent of the town, or its agents, and were unau-

thorized. The bank made no inquiries and took no steps to ascertain whether Pitkin had authority to execute the notes, except that at some time after the first note was executed the president of the bank inquired of and was informed by him that he had authority to borrow money for the town. The attention of the president and officers of the bank was called to his treasurer's account, and to its condition, whenever any overdraft of the same occurred.

The plaintiff, its officers and agents, had no knowledge or suspicion of any of the overdrafts, or that the account of Pitkin as treasurer was at any time overdrawn.

The proceeds of the notes would not have been needed for the use of the town, or to keep the account good in the bank, if Pitkin had not drawn against the treasurer's account for his own uses. The use of the notes enabled Pitkin to conceal from the town, its auditors and other officers, the true state of his account as treasurer during the entire period covered by them.

The pass-books issued by the bank to Pitkin contained these discounted notes. These pass-books were never shown to the town auditors. No other treasurer's bank account was shown to the auditors except those contained in counterfeit pass-books hereafter described.

Pitkin's account as treasurer was annually audited by the town auditors. For the purpose of deceiving the auditors, Pitkin, by means unknown, procured pass-books from the bank and caused a fictitious bank account, purporting to be his account with the bank, but which did not contain the discounted notes, to be written in them, and exhibited these books to the auditors, and thereby misled them as to the state of his account with the town as treasurer, and also as to the state of his bank account as treasurer, and prevented the discovery of the misappropriation of money by him and the existence and use of the notes.

On the 2d of February, 1878, his account as treasurer was audited with reference to its condition on the 22d day of December, 1877. At this time there was apparently a balance due from the town to him of $415.70 ; but there

was outstanding and unpaid the note of $4,000 mentioned above as having been paid on the 2d of May, 1878, and also the note of $500 paid April 10th, 1878, and the note of $2,000 paid April 20th, 1878. After January 1st, 1878, Pitkin received from the town of East Hartford and deposited to his credit in the bank as treasurer, $16,603.85. Against this amount he drew checks on account of the town of $6,535.35, which would have left a balance, at the time of his flight, to the credit of his treasurer's account of $10,068.50; but, on the 10th of April, 1878, he paid from this account the $500 note, and on the 20th of April, 1878, the $2,000 note, and on the 2d of May, 1878, the $4,000 note, as above mentioned. The money thus taken would have made good Pitkin's default to the town.

The amount charged for discounting the notes was $842.62, which was taken directly from his treasurer's account.

At the close of Pitkin's account as treasurer he was indebted to the town more than $8,000, and had in bank to his credit, as treasurer, a balance of $4,987.53. This balance was by the plaintiffs reduced to $3,877.07, which, on September 12th, 1878, was taken from the bank by Pitkin's successor in office.

The attention of the president of the bank was not called to the state of the account, except at times when it was overdrawn or notes were discounted or paid.

The defendants offered evidence to prove that it was not the practice in the bank for the president or cashier to inspect the items of the accounts of its customers, unless in consequence of overdrafts, or for some other particular reason, their attention was called to them. Such evidence was received subject to the objection of the plaintiffs. If the evidence be admissible, the fact is found in accordance with such evidence.

In December, 1875, shortly after the first overdraft, the president of the bank called Pitkin's attention to the fact, and Pitkin then gave the reason therefor that the town needed the money, as taxes were delayed, and the bank

would be repaid as they came in. Similar statements were subsequently made by Pitkin to the president as a reason for allowing overdrafts and discounts. These statements of Pitkin were untrue.

All the overdrafts, loans and discounts were permitted and made by the bank in good faith, relying upon the representations of the treasurer above stated, and with the belief, on the part of the bank, that the same were needed by the town for its accommodation.

During all the time of Pitkin's transactions with the bank he was publicly reputed to be a man of integrity, and was so regarded by the officers of the bank.

Interest was allowed by the bank upon the deposits in the treasurer's account, but to what extent did not appear.

Neither the plaintiffs nor the bank had any knowledge or suspicion of Pitkin's frauds or of any misapplication of moneys by him, until after he left the state in 1878, unless upon the foregoing facts such knowledge is to be imputed to the bank.

Upon these facts the case was reserved for the advice of this court.

*R. D. Hubbard* and *T. M. Maltbie*, with whom was *C. H. Briscoe*, for the plaintiffs.

1. Pitkin had no power, by virtue of his office as treasurer, to borrow money in the name or on the credit of the town. He was merely the custodian of the funds of the town, to keep and pay them out on proper orders. Gen. Statutes, p. 27, secs. 1, 2, 3; *Lowell Savings Bank* v. *Winchester*, 8 Allen, 114; *Dickinson* v. *Conway*, 12 id., 491; *Railroad Nat. Bank* v. *Lowell*, 109 Mass., 214; *Agawam Bank* v. *South Hadley*, 128 id., 506. He was an agent of the town for a special purpose, with whom persons dealt at their own risk. *Ladd* v. *Town of Franklin*, 37 Conn., 53. The town could speak only by its votes, and of these the bank could have informed itself and therefore was bound to know what the fact was. *Post* v. *Clark*, 35 Conn., 342; *McDonald* v. *Mayor &c. of New York*, 68 N. York, 23.

2.   The funds deposited in the defendant bank in the name of "L. T. Pitkin, Treasurer," were the funds of the town, of which the form of the account gave the bank notice; and although he could as treasurer check out those funds, yet when the deposit was exhausted, and the bank paid his overdrafts, these overpayments were loans in the most objectionable form, and loans to him personally and not to the town, and the town was under no obligation to pay them.   *Kelly* v. *Lindsey*, 7 Gray, 287; *Commonwealth* v. *Tuckerman*, 10 id., 189; *Railroad Nat. Bank* v. *Lowell*, 109 Mass., 214; *Agawam Bank* v. *South Hadley*, 128 id., 507; *Minor* v. *Mechanics Bank*, 1 Pet., 71; *Bank of St. Mary* v. *Calder*, 3 Strobh., 403; *Eichelberger* v. *Finley*, 7 Har. & J., 381; *Lancaster Bank* v. *Woodward*, 18 Penn. St., 357; *Central National Bank* v. *Royal Ins. Co.*, 103 U. S. Reps., 785.   It does not help the case that he gave his note as treasurer for the payment of these overdrafts. He had no power to pledge the credit of the town and the bank knew that he had not.   *Parsons* v. *Monmouth*, 70 Maine, 262, and authorities before cited.   The notes, like the overdrafts, were simply his private debt.

3.   The giving checks as treasurer to pay these notes can not affect the rights of the town.   The bank, which took the checks in payment of what it knew to be his own private debts, can not retain the money so received.   It was taking what it knew to be funds of the town to pay itself a debt which it knew that the town did not owe and that no one was legally holden for except Pitkin himself.   The money thus unlawfully taken by the bank would make good Pitkin's indebtedness to the town.

*L. E. Stanton*, for the defendant.

1.   The plaintiff has brought against the defendant the action of general assumpsit.   It is an equitable action in which the plaintiff seeks to recover money which, as alleged, the defendant *ex æquo et bono* ought to pay over.   The bill of particulars contains all the deposits which the plaintiff's treasurer made in the defendant bank during over five

years. Every dollar of this amount has been paid out upon the checks of the plaintiff's treasurer. This fact would seem to furnish a complete answer to the declaration. But the plaintiff goes further and insists that since Pitkin proved a defaulter to the town for a certain amount, the bank in which he kept his account shall pay over again, out of an account which has been balanced and closed, enough at least to make good to the town this default. But the bank knew nothing about his default to the town, had no suspicion whatever of it, and of course had nothing to do with it. Plainly the bank was not *particeps criminis*, and cannot upon that principle be subjected.

2. But the plaintiff insists that we have made, by means of overdrafts and discounts, certain unauthorized loans to the treasurer. Then it is said that we have collected these unauthorized loans with interest out of town funds. Because we have collected these notes, and because they were not authorized by a town vote, it is urged that we must hand back to the town a portion of our own money. We are not seeking to recover upon the notes. We discounted six of them, amounting to $15,500, and they have been repaid to us. The court does not find that a dollar of this money was not applied to town purposes. It is indeed found that if our notes had not been repaid there would have been enough money left to protect the town from loss. But if when borrowed it went to town purposes then it was justly repaid. We submit that the law is not so that any part of these moneys can be recovered from the bank merely because the notes were unauthorized. The treasurer was a trustee. The rule as to lenders and purchasers dealing with executors and other trustees, is that the lender is protected unless he has connived with the trustee at some intended fraud. The lender must, in order to be subjected to loss, have known or had good reason to suspect that the trustee intended to misapply the loan. Even then, he may recover his loan to the extent to which it has been well applied. *Field v. Schiefflin*, 7 Johns. Ch., 150; *Keane v. Robarts*, 4 Madd. Ch., 357; *McLeod v. Drummond*, 17

Vesey, 152; 3 Redfield on Wills, 231. In a recent case this court cited *Bondenham* v. *Hoskyns*, 2 DeG. M. & G., 903, *Duncan* v. *Joudon*, 15 Wall., 186, and *Smith* v. *Ayer*, 101 U. S. Reps., 327, and said that in these cases the pledgee knew of the intended misuse, and added :—" We think that courts have not decreed a forfeiture unless the pledgee had actual knowledge of facts which of themselves afford as convincing evidence of the fraudulent intent as if the executor or trustee had made such a declaration to him. * * Courts are unwilling to decree a forfeiture for · fraud upon knowledge imputed to the pledgee unless the facts in which it is found force the imputed close up to the actual; unless indeed, to borrow a rule of evidence, they exclude all reasonable doubt as to the existence of knowledge." *Goodwin* v. *Am. Nat. Bank*, 48 Conn., 566. The mere want of a town vote was not enough to inform us of an intended fraud upon the town.

3. But the treasurer did not misapply the loan, or commit any fraud by means of it. The proceeds of all the notes were drawn out for town purposes long before they were repaid to us. Before we began making the loan Pitkin had committed the fraud. He had done it by checks for nearly $25,000. These were for his private use. We were obliged to pay them. We had no knowledge of their fraudulent character. We are not responsible in any way for the fraud. *Munn* v. *Burch*, 25 Ill., 35; *Downes* v. *Phœnix Bank*, 6 Hill, 297 ; *Marzetti* v. *Williams*, 1 Barn. & Ad., 415. Nor are we responsible for his frauds by checks from one account to another. A bank account is made to be checked against. *Central National Bank* v. *Conn. Mutual Life Ins. Co.*, 12 Reporter, 705; *Goodwin* v. *Am. Nat. Bank*, 48 Conn., 550; *Gray* v. *Johnston*, L. Reps. 3 House of Lords Cas., 1; *Exparte Kingston*, L. Reps., 6 Cha. App., 639.

4. It is said that because the notes were unauthorized the payment of them out of town funds was unlawful. But the facts present a totally different question. Our money is in our hands. We have received nothing but our own money with interest. The plaintiff attempts to take

part of this amount away from us again. *Marsh* v. *Fulton County*, 10 Wall., 684. The town had the benefit of the loan, and we could have recovered, if not upon the note, upon the implied obligation of the town to do justice. *Oneida Bank* v. *Ontario Bank*, 21 N. York, 496. Trustees made a mortgage without authority. The mortgagee was permitted to stand as creditor to the extent to which the loan was properly applied. *Devaynes* v. *Robinson*, 24 Beav., 86. Even if there be neither original authority nor subsequent ratification, a corporation is subject to an implied liability to repay money of which it has had the benefit. *Nelson* v. *Mayor &c. of New York*, 63 N. York, 554; *Moore* v. *Mayor &c. of New York*, 73 id., 238; *Bank of U. States* v. *Dandridge*, 12 Wheat., 64. Where a corporation has received the value it must pay, and the want of authority cannot be set up as a defence. *Steamboat Co.* v. *McCutcheon*, 13 Penn. St., 13; *Allegheny City* v. *McClurkan*, 14 id., 83. It is now settled that *assumpsit* may be maintained against a corporation upon an implied contract. *Seagraves* v. *Alton*, 13 Ill., 371; *Steam Navigation Co.* v. *Weed*, 17 Barb., 378; *Chester Glass Co.* v. *Dewey*, 16 Mass., 94, 101. Corporate officers without authority purchased property and issued notes; the corporation had the property; held liable to pay the notes. *Moss* v. *Rossie Lead Mining Co.*, 5 Hill, 137. Money paid to a town under a void contract, can be recovered back under a count for money had and received. *Dill* v. *Wareham*, 7 Met., 438, 447. If a city obtain money by mistake, without authority of law, it must refund. *Argenti* v. *San Francisco*, 16 Cal., 255. Officers of a municipal corporation without authority made deeds of its real estate, but gave no title. The purchase money went into its treasury. Held liable to refund. *McCracken* v. *San Francisco*, 16 Cal., 631; *Grogan* v. *Same*, 18 id., 590, 610; *Pimental* v. *Same*, 21 id., 352. The same principle prevails in our own state. *Perry* v. *Simpson Waterproof Manf. Co.*, 37 Conn., 536. See also Dillon Mun. Corp., §§ 383, 384; *Louisiana* v. *Rood*, 102 U. S. Reps., 294; *Gause* v. *Clarkville*, 5 Dillon C. C. R., 180.

5.　Did the town in fact have the benefit of the money? The court does not directly find upon the point, but the fact is placed beyond doubt. We discounted six notes. The proceeds of each of these notes were, long before the payment of the same, drawn out of the account by treasurer checks, no one of which is impeached, and all of which therefore were for town purposes. The honest checks of the treasurer were easily separated from the fraudulent by comparing them with selectmen's orders. No check during the period of any overdraft is attacked by the plaintiff. Note No. 1 was discounted Dec. 31st, 1875. The proceeds were drawn out and the account overdrawn three times before payment. Note No. 2 was discounted July 13th, 1876, and Note No. 3, Aug. 25th, 1876. The account was overdrawn eight times before final payment of these notes. Note No. 4 was discounted Oct. 9th, 1876. The account was twice overdrawn before payment. Note No. 5 was discounted Dec. 18th, 1877. The account was twice overdrawn before payment. Note No. 6 was discounted Jan. 22d, 1878. The account was overdrawn once before payment. The proceeds of these notes were needed for the town and were thus, by checks which cannot be questioned, drawn and used to pay town bills. Pitkin had made havoc of the town funds long before these discounts, namely, between November, 1872, and November, 1875, as appears by the record. It was that old *devastavit* which rendered it necessary for him to borrow money for the town. When he did borrow he did not intend to misapply the loan, and in fact did apply the whole to town uses. As to interest on the notes, we say that should follow principal. The treasurer of the town had stolen $25,000 of their funds. He was compelled to borrow in order to meet current bills. The town had our money and had the use of it. They ought in equity to pay for the use of it. We allowed interest to the treasurer upon deposits. Again, the funds were well applied to town purposes by being placed in the treasurer's account and kept there. It was the plaintiff's treasury. We never permitted a dollar to go out except upon treasurer's checks.

6. It is found that the amount of Pitkin's default is the difference between his receipts and payments after the date of the last audit, that he made certain deposits and checks after the last audit. Then it is found that if he had not repaid to us $6,500 of notes, his bank balance would have been enough larger to cover the amount of his default, which was $3,878.92. But he had exhausted this $6,500 to pay town bills, and had no right in equity and good conscience to refuse payment to us and leave the money in bank account in order that the town might have it again. Again, it is found that the use of the notes enabled Pitkin to keep good his bank account and to conceal the state of his account with the town. But this can mean nothing more than that the public exposure of his affairs was delayed. None of these notes, nor any bank balance derived from them, were ever seen by the town officers. The counterfeit pass books did not contain the notes and in them he made such balances as he chose. As to the delay in the exposure of his affairs, had we refused to loan for the benefit of his treasurer account, and had the crisis come in 1876, he would then have been a defaulter in about $25,000 as against less than $4,000 in 1878.

7. The plaintiff has no equity to recover the money from us. The fraud was committed by the agent of the plaintiff, who was reputed to be a man of integrity. The defendant has acted in perfect good faith without suspicion of fraud. It has simply taken its debt with interest. It has the better right to the money. The bank is defendant in the equitable action of general assumpsit. No matter how we obtained the money, we may keep what justly belongs to us. *Lime Rock Bank* v. *Plimpton*, 17 Pick., 159. "Courts have gone great lengths in holding that the ground of recovery in this action is the equitable right of the plaintiff to the money itself, without regard to the manner in which the defendant obtained it. However tortiously it may have come into his hands, the defendant can in this form of action set the plaintiff at defiance if he has the best right to it." *Goddard* v. *Town of Seymour*, 30 Conn., 401; *Brainard* v. *Town of Colchester*, 31 id., 411.

PARDEE, J.   Leonard T. Pitkin, treasurer of the town of East Hartford, deposited town money with the American National Bank; he withdrew it upon official checks, but for his own private uses; afterwards the bank paid his official overdrawing checks, and discounted his official notes, the avails of which were deposited with it to his official account, and part of them at least were withdrawn upon official checks for town uses.   Subsequently by official checks upon town money deposited with the bank he repaid the loan.   The bank had no knowledge of the misappropriation. The treasurer had no power to borrow money for the town or bind it for the repayment; the bank made no inquiry of him or any other person as to his authority, but it loaned the money in good faith, believing that it would be applied to town uses.   The town sues for the money appropriated by the treasurer to the payment of the notes.   The case is reserved for our advice.

As the bank must be held to have known that the treasurer was not authorized to borrow money for the town, paying his overdrawing checks and discounting the notes were each loans by it to him as an individual.   By lending to an officer whose office conferred no power to borrow, the bank cannot force itself into the position of a creditor of the town against its will and without its knowledge; and the payment of its debts by the unauthorized act of the treasurer from money thus borrowed is not an appropriation of it by the town to its uses; it had previously placed money in his hands for the payment of those specific debts; there remained to it upon knowledge the right to repudiate the unauthorized borrowing and payment; the right to remain in debt, with its creditors' permission; not having that, the right to borrow for itself.   Upon such repudiation the transaction remains the lending by the bank to the agent for himself; the money borrowed remains his own; the duty to repay solely upon him; the right of the bank to recover, solely from him.   The bank had notice as to the time when, and as to the character of the checks by which, the treasurer withdrew his deposit with it of the money

loaned to and borrowed for himself; it knew when it was exhausted; it knew when after such exhaustion he again as a duly authorized agent deposited with it money belonging to the town; and it knew the payment of his debt to it to be from that; knew it to be unauthorized and of course illegal. The intentional reception of this money upon a private debt was burthened with an obligation to return it upon demand.

There are many instances in which municipal corporations have undertaken to sell, and have received money for, property which they had no power to convey; have received money and property in ways and for uses not permitted by the law of their being; have received the benefit of labor and materials furnished, in ways forbidden by their respective charters, for buildings which they were under obligation to erect, and have undertaken to shield themselves from re-payment of the money or payment for the property thus appropriated behind either the errors of their agents or their own inability.

But in behalf of the complete and irresistible equity in favor of the claimants, the courts have set aside these technical defences; but only in behalf of perfect equity; only in cases where, notwithstanding violations of restrictions in charters, the corporation has received and retained for its advantage that which in good conscience it should repay or pay for; only in cases where, if it is compelled to repay money or pay for property applied to its use by the unauthorized act of an agent, the judgment will inflict no loss upon it.

In the case before us, the bank having loaned money to an agent known to be without authority to borrow, cannot invoke the aid of this principle without demonstrating that upon all the facts a judgment in its favor will inflict no loss upon the town. As a matter of law the loan was to an individual; the town cannot be forced into the position of a debtor for it, if thereby it will without fault suffer loss, even if he volunteered without its knowledge to pay therewith its debts.

VOL. XLIX—70

The Superior Court is advised to render judgment for the plaintiff for the sum of $3,878.92, with interest from demand.

In this opinion the other judges concurred.