THE TOWN OF FAIRFIELD *vs.* THE SOUTHPORT NATIONAL BANK.

Third Judicial District, New Haven, June Term, 1907.

BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

A cause of action for the conversion of bonds by an alleged bailee, and also one for the recovery of their proceeds, as money which the defendant could not in equity and good conscience retain, may be stated by alleging in consecutive paragraphs the facts pertinent to the transaction out of which such causes of action arose.

An agent of the plaintiff town, who was also an employee of the defendant bank, having the care of certain negotiable bonds of the town, placed them in the bank's safe for his own personal accommodation, with knowledge of a standing rule of the bank that it would not act as a custodian for the safekeeping of securities, and that any securities left in its safe were at the owner's risk. The bonds were stolen from the safe by S, the defendant's cashier,

and converted to his own individual use. *Held* that the defendant was not liable as bailee for the theft of the bonds.

To conceal embezzlements which he had been making from the bank, *S* borrowed $6,000 on his own personal note, using the securities stolen as above as collateral, deposited the money to the credit of the bank, and thus augmented by that amount the assets of the bank which, upon its subsequent insolvency, passed into the hands of its receiver. *Held:*—

1. That the bank was under a legal obligation to repay said sum to the plaintiff; that while *S* acted individually in using the proceeds of his theft to pay his debt to the bank, he nevertheless acted as the defendant's agent in receiving and accepting said sum, and the defendant was therefore bound either to disclaim such payment by *S*, or to accept it with the burden of his knowledge; and therefore in either event the defendant bank could not in equity and good faith retain the money as against the plaintiff, its true owner.

2. That interest by way of damages for the detention of the money was allowable, to be computed from the date of the plaintiff's demand.

The doctrine is now firmly established that one who holds money which he ought in equity and good conscience to pay over to another is subject to a legal duty to make such payment.

Argued June 4th—decided July 30th, 1907.

ACTION for the conversion of fourteen bonds alleged to have been left with the defendant as bailee, and for a recovery of the proceeds thereof received and unlawfully held by the defendant, brought to and reserved by the Superior Court in Fairfield County, *Gager*, *J.*, upon a finding of facts, for the advice of this court. *Judgment for plaintiff advised.*

The complaint contains, in substance, the following allegations : 1. Prior to April 21st, 1903, the plaintiff owned fourteen bonds, of the denomination of $500 each and value of $7,000, which the plaintiff delivered to the defendant, and the defendant received the same as bailee of the plaintiff. 2. On April 21st, 1903, one Oliver T. Sherwood, without plaintiff's knowledge or assent, took said bonds from defendant's safe, and by pledge of said bonds as collateral security for his demand note of $6,000, obtained a check for that amount payable to his order. 3. Said Sher-

wood acted as cashier of the defendant and on behalf of the defendant in taking and pledging said bonds and in obtaining said check. 4. On April 21st said Sherwood endorsed said check and delivered it to defendant, and defendant then endorsed said check and deposited it to its credit in the National Park Bank of New York, and said check was paid, and the avails thereof, $6,000, went to the use, credit and benefit of the defendant. 5. Upon default of payment of Sherwood's said note, said bonds were sold by the pledgee thereof on May 21st. 6. Prior to May 25th the defendant bank became insolvent, and a receiver was duly appointed and qualified, of whom the plaintiff, on August 18th, made demand and claim for said bonds or their value in money, which claim was on October 5th disallowed by the receiver.

The defendant's answer admitted the 6th allegation, denied the 1st, 3d, and 5th allegations, and denied the 2d and 4th allegations, coupling with it an averment that the deposit of said check to the credit of the defendant bank was without authority from or knowledge of said bank, was for said Sherwood's own use and benefit, and that said deposit was forthwith withdrawn by said Sherwood and used for his own benefit, and the defendant did not have the use or benefit of any part thereof.

The finding shows, among other facts, the following: The defendant bank was and for many years had been a national banking association, with a capital of $100,000 and a surplus of $40,000. Oliver T. Sherwood became cashier of said bank in 1884, and continued as such until May 12th, 1903, when he absconded; he was subsequently arrested and is now serving a sentence in the State prison. The duties of said Sherwood, as cashier, were those usually appertaining to that office: he received in the bank's behalf all commercial papers, notes, drafts, checks, or other papers payable to said bank or its order, endorsed the same for deposit with its name, and deposited them to its credit with the National Park Bank of New York. During the time he was cashier said Sherwood was, by permission of

the directors of the bank, the active managing officer, and actively directed the business and affairs of said bank. The board of directors had never authorized said cashier to exercise any powers or duties other than those usually incident to said office. For a period of about seven years prior to May, 1903, said Sherwood was engaged in continuously misappropriating the funds of said bank, and by false entries and accounts in its books and by falsifying the accounts of its depositors, he concealed such misappropriation from the knowledge of all the other officers of the bank. The funds of the bank so unlawfully misappropriated amounted, in May, 1903, to more than $150,000.

On May 19th, 1903, Ellis S. Pepper was appointed by the United States controller of the currency as receiver of said bank, and has ever since been engaged in winding up its affairs as an insolvent bank. The capital and surplus of the bank were found completely wiped out, and an assessment of eighty-three per cent. has since been made against the stockholders.

The fourteen bonds mentioned in the complaint were negotiable bonds and were owned by the plaintiff, and had been placed and kept by its agent, Francis P. S. Sherwood, who was also an employee of the bank, in the safe of the defendant for his own personal accommodation; the plaintiff's said agent well knowing a standing rule in the bank, that the bank would not act as a custodian for the safe-keeping of negotiable securities, and that any securities left in the bank's safe were at the risk of the owner. Said Oliver T. Sherwood and one of the directors knew that said bonds were in said safe; the evidence did not disclose whether the other directors had knowledge or not.

In respect to the 2d and 4th allegations the finding is as follows: On April 21st, 1903, said Oliver T. Sherwood took from the safe of said bank said fourteen bonds and pledged them with N. W. Harris & Company, brokers of New York City, as collateral security for a loan of $6,000, evidenced by the promissory note of said Oliver T. Sherwood (a demand note for $6,000, reciting the deposit of the

bonds as collateral security, and containing agreements as
to the deposit, on demand, of additional security, and au-
thorizing the sale of the bonds on default of payment or
breach of agreement). Said Sherwood thereupon received
from N. W. Harris & Company a check of which the fol-
lowing is a copy, viz:—
"No. 2888.

N. W. Harris & Company, Bankers,
New York, April 21, 1903.

Pay to the order of Oliver T. Sherwood, $6,000, six
thousand dollars.

To the National Bank of Commerce,
New York.                                } N. W. Harris & Co. "


Said check is endorsed on the back thereof as follows,
viz:—
" Oliver T. Sherwood,
Pay National Park Bank or order.
Southport National Bank,
Oliver T. Sherwood, Cashier. "
" Received payment through New York Clearing House,
April 21, 1903.
The National Park Bank of New York. "

Said Sherwood, on April 21st, 1903, deposited said check
in said National Park Bank, to the credit of said South-
port National Bank. Said deposit was placed by said Na-
tional Park Bank to the credit of said Southport National
Bank, according to its ordinary course of business, and be-
came subject to the call of said Southport National Bank.
Said check was duly collected by said National Park Bank
from the bank on which it was drawn, through the New
York clearing house, in the usual manner, on the day upon
which it was drawn. Said deposit in the National Park
Bank of $6,000, the avails of said note to Harris & Com-
pany, was made without the knowledge or authority of any
officer of the bank except its cashier. When the receiver
was appointed, the defendant bank had to its credit in said

National Park Bank more than $6,000, and the receiver has since his appointment used the same in the administration and settlement of the affairs of the bank. Said fourteen bonds were on May 25th, 1903, sold by said Harris & Company for the sum of $6,938, because of default in the payment of said note, and after applying the proceeds to the payment of said note, the balance remaining in their hands, amounting to $938, was paid to the plaintiff.

In respect to the defendant's averment that the proceeds of the bonds deposited to the defendant's credit in the National Park Bank was so deposited without the defendant's authority or knowledge, and were forthwith withdrawn by Sherwood and used for his own benefit, and the bank did not have the use or benefit of any part thereof, the following additional facts are found. (Upon the trial the court admitted evidence, as offered by the defendant, as to the plan, purpose and intention of Sherwood in doing the acts which it is found he did, against the objection of the plaintiff, who duly excepted.) "On the 30th of March, 1903, said Oliver T. Sherwood was administrator upon the intestate estate of Burr Perry, deceased, and as such administrator he had a deposit account with said bank. Prior to said March 30th, 1903, said Oliver T. Sherwood, as administrator, had been ordered and required by the Court of Probate to make a partial distribution of said estate to the heirs at law of said deceased, and in pursuance of said order it became necessary to pay to each of the five following-named persons the sum of $2,000 each, viz: Susan D. Perry, Sarah J. Perry, Loretta B. Perry, Alfred S. Perry, and Francis B. Perry. On said 30th day of March, 1903, said Oliver T. Sherwood drew a cashier's check upon said bank to the order of each of said five named persons for $2,000, and indorsed upon the face of each of said checks the words, 'certificate of deposit,' and indorsed upon the back of each of said checks the following: 'This certificate bears interest at the rate of 4½ % per annum and is payable upon ten days' demand,' and signed each of said indorsements, 'O. T. Sherwood, Cashier,' and delivered the same

to each of said five named persons. Said certificate of deposit in favor of said Alfred S. Perry was exchanged at said bank on April 3d for cashier's check by said Oliver T. Sherwood for said sum, and collected through the Connecticut National Bank, April 4th, and on that date charged to the estate of Burr Perry, in the account of that estate with said bank. After payment of said check there was produced an overdraft of $131 against said account. On April 6th, 1903, said Sherwood received and deposited to the account of said estate the sum of $3,500." Said certificate of deposit in favor of said Francis B. Perry was exchanged for a cashier's check for the same amount, which check was collected through said Connecticut National Bank and charged to the account of Burr Perry on April 9th. This left a balance to the credit of said estate of $1,358.97. Said certificates of deposit in favor of Sarah J. Perry, Loretta B. Perry, and Susan D. Perry, were each exchanged at said bank for three cashier's checks payable to the order of said named persons, and collected through the Bridgeport National Bank, and were paid April 4th, 1903. Said three cashier's checks were held in the cash assets of the bank until April 24th, 1903, and on that date were charged to the account of said estate of Burr Perry.

After said Oliver T. Sherwood had obtained said check from said Harris & Company and the same had been deposited as aforesaid, he entered a credit in one of several personal accounts which he kept with said bank, under date of April 21st, of $6,000, and entered a memorandum in another of his personal accounts with said bank of three several items of $2,000, and carrying out therein a debit of $6,000, he then entered a credit item in the account of the estate of Burr Perry of $6,000, under date of April 23d, and a corresponding charge therein of $6,000, under date of April 24th. Said items of $6,000, so carried through his two personal accounts to the account of Burr Perry, were in fact the item of $6,000 deposited in said National Park Bank, the avails of the loan from Harris & Company. The purpose of utilizing said two personal accounts was to

prevent the tracing of said avails, and make the record of said transaction difficult for any other person to trace or understand. The memorandum in his personal account in connection with a debit entry of $6,000, of three separate items of $2,000, was entered as a means of personal identification of the three items of $2,000 each, held in the cash, to which said sum of $6,000 was to be applied. Before drawing said five certificates of deposit for $10,000, as above set forth, said Sherwood cast about to see how he could meet this obligation. The semi-annual bank examination was drawing near, and he feared to reduce the cash assets of the bank, and he had not sufficient funds to the credit of the estate of Burr Perry with which to pay said amounts. There was a balance to the credit of the estate of Burr Perry nearly sufficient to pay one of said beneficiaries, and he anticipated said collection of $3,500 which would take care of another. As to the remaining three, he determined to borrow the $6,000 required upon the bonds of the town of Fairfield, which he had previously resorted to for dishonest purposes. It was with this purpose and intention that he drew the five checks hereinbefore referred to, and retained said three checks in the cash without charging the same to any account until he had opportunity to go to New York City with said bonds; and he carried into effect and consummated the transaction in the precise way which was contemplated when said certificates of deposit were drawn.

No other officer of said bank had any knowledge of any part of said transaction, nor of the entries in carrying it out.

The finding states this conclusion: "Except as hereinbefore set forth, and unless the facts found in law produce a different conclusion, the Southport National Bank had no beneficial interest in said deposit, and received no benefit therefrom."

*Daniel Davenport* and *Elmore S. Banks*, for the plaintiff.

*Stiles Judson*, for the defendant.

HAMERSLEY, J.   The complaint states facts sufficient to support an action against the defendant, based on its liability as the bailee of the plaintiff's fourteen bonds, and also an action based on the liability of the defendant arising from its reception of the property of the plaintiff (being the proceeds of said bonds), which property the defendant cannot rightfully, equitably, and in good conscience hold.   These grounds of action are properly stated by setting forth, in consecutive paragraphs, the facts pertinent to the transaction out of which the plaintiff's true cause of action arose.   *Craft Refrigerating Machine Co.* v. *Quinnipiac Brewing Co.*, 63 Conn. 551, 562, 29 Atl. 76; *Knapp* v. *Walker*, 73 Conn. 459, 461, 47 Atl. 655.

Upon the facts found it is manifest that the defendant did not become the bailee of the plaintiff's bonds.   The plaintiff's agent, Francis P. Sherwood, placed the bonds in the defendant's safe for his own personal accommodation, with knowledge of a standing rule in the bank that the bank would not act as a custodian for the safe-keeping of negotiable securities, and that any such securities left in the bank's safe were at the risk of the owner.   While the bonds remained in the defendant's safe subject to the sole control of Francis P. Sherwood, they were in the possession of the plaintiff's agent and of the plaintiff.   When, on April 21st, 1903, the bonds were taken from the safe by Oliver T. Sherwood, with the intent to appropriate them to his own use, they were taken from the possession of the plaintiff, and the act was not the act of the bank or of an agent of the bank, but was a theft by Oliver T. Sherwood.

The defendant is not liable to the plaintiff for this theft by a third party.   If in fact the failure of the directors to discover that their cashier had become a dishonest man, liable to steal property within his reach, and their failure to remove him from his office were due to a negligent performance of their duties as directors, that negligence would not make the defendant liable to the plaintiff as bailee of the plaintiff's bonds.

In respect to the other ground of action, the finding

shows the following facts : The defendant bank kept a portion of its money on deposit with the National Park Bank. On April 21st the defendant's money so on deposit was increased by the addition thereto of $6,000. This money had been that day fraudulently obtained by Sherwood (acting in his individual capacity) through his theft of the plaintiff's bonds and the transfer of those bonds to an innocent third party, as detailed in the finding. The $6,000 so fraudulently obtained by Sherwood, acting in his individual capacity as thief of the plaintiff's bonds, was immediately received by Sherwood, acting in his capacity as the defendant's cashier, and added to and mingled with the money of the defendant. This money so added to the defendant's money on April 21st passed, on May 19th (unless previously used by the defendant in the usual course of business), into the hands of the receiver, and has been used by him ; this fact is necessarily established by the finding, by which it appears that the defendant failed to prove any use subsequent to April 21st of its money on deposit, not in the usual course of its business. On or before August 18th the defendant and its receiver learned of Sherwood's fraud in obtaining the money so added to its funds on April 21st, and of the plaintiff's interest therein. No consideration for the $6,000, of which the defendant thus received the benefit, ever moved from the defendant to the plaintiff, or to any one, unless the deposit is to be regarded as a payment by Sherwood of a debt due from him to the defendant.

We think that under these circumstances the defendant cannot hold this money, the product of Sherwood's fraud upon the plaintiff, against the plaintiff's demand, without violating a moral duty the defendant owes the plaintiff. Had Sherwood, instead of stealing the plaintiff's negotiable bonds of the amount and value of $7,000, stolen current money belonging to the plaintiff of the same amount and value, and under similar circumstances received as cashier and added to the defendant's money on deposit $6,000 of this stolen money, the defendant would be under a similar

moral duty to pay the plaintiff this money. In both cases the duty rests upon the same universal law of ethics. In both cases the money is the product of a fraud, commencing with a theft from the plaintiff, by which the plaintiff has been deprived of, and the defendant has (without giving any compensation) received the benefit of, $6,000. The fact that in the former case the fraud is more indirect and complicated than in the latter does not alter the nature or lessen the force of the duty resting upon the plaintiff.

The plaintiff has received and retains money which, for all practical purposes as affecting the defendant's duty, was stolen from the plaintiff and immediately given by the thief to the defendant. It is plain, too plain for argument, that in equity and good conscience the defendant ought to pay over to the plaintiff the money thus obtained and used. The doctrine that one who holds money which he ought in equity and good conscience to pay over to another is subject to a legal duty to make such payment, is firmly established. 3 Black. Comm. 162; *Northrop* v. *Graves*, 19 Conn. 548, 555.

It further appears in the finding that prior to April 21st the defendant's cashier, Sherwood, had been engaged in appropriating its funds to his personal uses, and especially on the preceding April 3d had so appropriated the sum of $6,000 to his own use as administrator on the estate of Burr Perry, which sum was never repaid, unless repaid by said transfer of the money so fraudulently obtained on April 21st. The defendant urges in argument, that if the deposit by Sherwood of this money on April 21st is to be regarded as a payment by him to the bank of his indebtedness for the same amount embezzled by him on April 3d, yet the defendant incurred no liability to the plaintiff through its acceptance of that payment, because Sherwood's knowledge of his own fraud could not be imputed to the defendant merely because he was its cashier, and, as Sherwood was the only officer of the bank having knowledge of the transaction, the defendant had no actual no-

tice of the fraud. It is true that a corporation which accepts in good faith from its debtor the payment of his debt to it, is not chargeable with the debtor's knowledge that the money paid was fraudulently obtained by him in an independent transaction with a third party, even though the debtor is an agent of the corporation in matters unconnected with the fraud ; but it is also true that it is chargeable with the knowledge of its agent when that knowledge comes to its agent (acting as its representative without its actual knowledge, though within the general scope of his authority) in the act of accepting on its behalf a benefit which it knowingly retains.

In the present case, treating the deposit as a personal payment made by Sherwood of his debt to the bank, then Sherwood, cashier, representing the defendant in a matter within the general scope of his authority, accepted on behalf of the defendant the money he had so fraudulently obtained, in satisfaction of a debt due from Sherwood, thief, to the defendant, and as cashier placed that money with the funds of the defendant, who has since retained it. If the defendant disclaims the acceptance by Sherwood, cashier, on its behalf, of this payment as unauthorized, then it necessarily disclaims any acceptance, innocent or not, of money paid it in discharge of a debt due from Sherwood, thief, and is in that case bound in equity and good conscience to pay over to the plaintiff money thus obtained and retained by it. On the other hand, if the defendant, by retaining and using the money thus placed in its treasury, affirms the act of Sherwood, cashier, in accepting on its behalf the payment of a debt due to it, then it necessarily assumes the knowledge with which its agent on its behalf did the act thus adopted as its own.

When an agent, acting in excess of his authority and without the knowledge of his principal, accepts on his principal's behalf money belonging to and fraudulently obtained from another with knowledge of the fraud, that principal, in treating this money as his own and retaining it as against the true owner, cannot claim as his own the

act by which the money was accepted, without also admitting as his own the knowledge with which that act was done. He cannot receive the benefit of the fraud and reject the resulting duty. This rule is the outcome of an unquestionable rule of ethics, it expresses a truism fundamental to jurisprudence, which the courts must apply as occasion may arise. *Bank of New Milford* v. *New Milford*, 36 Conn. 93, 101; *Atlantic Bank* v. *Merchants Bank*, 10 Gray (Mass.) 532; *Atlantic Cotton Mills* v. *Indian Orchard Mills*, 147 Mass. 268, 272, 17 N. E. 496; *People's Bank* v. *National Bank*, 101 U. S. 181, 183; *Aldrich* v. *Chemical National Bank*, 176 id. 618, 633, 20 Sup. Ct. Rep. 498.

The defendant's counsel, however, seems to rely upon the claim that the defendant, as a matter of law, received no benefit from the fraud, because its cashier, by making false entries in its books, as detailed in the finding, attempted to conceal the embezzlement for his benefit as administrator on the estate of Burr Perry, of $6,000 of the defendant's funds on deposit April 3d, and to conceal his reimbursement of the defendant for the money so embezzled with the money obtained through his theft on April 21st; so that the books, thus fraudulently manipulated, appear to be consistent with the theory that Sherwood had on April 21st placed to the credit of the defendant $6,000, and immediately thereafter had withdrawn the same for his own use and benefit.

This claim seems to us to be without foundation. The real facts are shown by the acts of Sherwood in drawing the cashier's checks on April 3d, by the payment of which on the following day the funds of the bank were actually depleted to the extent of $6,000, and in making the deposit on April 21st, by which the funds of the bank were actually increased through the reception of $6,000 obtained as aforesaid. These facts are in no way altered by the fraudulent manipulation of the defendant's books, and their legal effect cannot be modified by any intention or purpose which may have been entertained by Sherwood, in embezzling the money of the bank for the payment of his own

debt to the Perry estate, to so conduct the operation that the eventual loss should fall upon the plaintiff rather than the defendant. It is a sufficient answer to the defendant's claim to call attention to the fact, which is a necessary inference from all the facts found, that on April 21st Sherwood increased the funds of the defendant on deposit with the National Park Bank by the addition to those funds of $6,000, product of the bonds stolen that day from the plaintiff, and that Sherwood did not thereafter check out this money to pay his debt to the Perry estate, but this addition to the defendant's funds remained subject to the defendant's control, and unless used by the defendant in the course of its business passed to its receiver on May 19th, and was used by him in settling the affairs of the defendant.

The transaction, substantially as detailed, might well have been conducted by two persons instead of by one person acting in two different capacities. In that case Sherwood, cashier, without special authority from the bank, would receive and deposit to the bank's credit $6,000 paid him by one he knew made the payment to conceal the payor's embezzlement from the bank to that amount, with money practically stolen from the plaintiff. It would not be claimed that in such case the defendant could, after knowledge of the fraud, in equity or good conscience retain its product. But the moral duty of the defendant is the same, whether it receives the product of the fraud through the acts of two persons or of one person acting in two capacities.

The personal identity of the agent of the bank who accepts for it the product of a theft, with the embezzler of its funds who commits that theft in order to cover his embezzlement, does not affect, unless to emphasize, the essential equity. A practical rule for determining, in this and similar cases, the essential equity, that is, for testing the moral duty consequent to such a situation, has been well stated by the Massachusetts Supreme Court. "If the treasurer of a corporation is a defaulter, and his defalca-

tion is as yet unknown and unsuspected, and he steals money from a third person and places it with the funds of the corporation in order to conceal and make good his defalcation, and the corporation uses the money as its own, no other officer knowing any of the facts, the corporation does not thereby acquire a good title to the money, as against the true owner, but the latter may maintain an action against the corporation to recover back the same." *Atlantic Cotton Mills* v. *Indian Orchard Mills*, 147 Mass. 268, 276, 17 N. E. 496. The rule was applied in that case to a situation very similar to the one in this case, and was sanctioned and applied to somewhat similar situations in *Ditty* v. *Dominion National Bank*, 75 Fed. Rep. 769, and *Aldrich* v. *Chemical National Bank*, 176 U. S. 618, 633, 634, 20 Sup. Ct. Rep. 498.

The plaintiff's right of recovery depends upon the money in question being, as between the town and the defendants, in equity and good conscience the money of the town. If for any reason the money is not now in good conscience the money of the town, as between the town and the defendants, the town cannot recover. *Goddard* v. *Seymour*, 30 Conn. 394, 401.

The defendant urges that the real defendants are now the creditors of the bank represented by the receiver, and that as between them and the plaintiff the equitable right of the creditors should prevail against that of the plaintiff. The creditors are not in fact or in theory defendants in this case, and have no right, legal or equitable, to funds in the hands of the receiver which the receiver, as representing the bank, cannot lawfully retain. He cannot lawfully retain and appropriate to the use of the bank or its creditors money which in equity and good conscience belongs to the plaintiff.

Interest by way of damages for detention of the money should be computed from August 18th, 1903, the date of the plaintiff's demand. *Selleck* v. *French*, 1 Conn. 32, 33 ; *Northrop* v. *Graves*, 19 id. 548, 561.

The Superior Court is advised to render judgment that

the plaintiff recover $6,000 damages, with interest on that sum from August 18th, 1903, and his costs.

Costs in this court will be taxed in favor of the plaintiff.

In this opinion the other judges concurred.