THE MUTUAL ASSURANCE COMPANY OF THE CITY OF NORWICH *v.* THE NORWICH SAVINGS SOCIETY.

MALTBIE, C. J., JENNINGS, ELLS, BALDWIN and FOSTER, Js.

Argued December 2, 1941—decided January 9, 1942.

*Robert P. Anderson,* for the appellant (defendant).

*Arthur T. Keefe,* for the appellee (plaintiff).

MALTBIE, C. J.  The plaintiff had on deposit in the defendant savings bank on April 18, 1933, the sum of $20,000, which was properly entered in a deposit book issued to it.  No further deposits were made, but interest was from time to time credited upon the book.  There were entered in it one large and a number of small withdrawals.  On October 1, 1939, the balance

on deposit as shown by the book was $10,062.50. The plaintiff brought this action to recover this amount and obtained judgment therefor, with interest. The entries of the account on the books of the bank, however, showed other withdrawals and the bank claimed that the balance due on the account was $3777.47 plus certain dividends which accrued after October 1, 1940.

The discrepancy between the entries in the deposit book and those upon the books of the bank was due, as the trial court has found, to the following circumstances: Harold P. Hull was, throughout the period in question, secretary and treasurer of the plaintiff and also assistant treasurer of the bank. The deposit book was in his charge and possession except for short intervals when it was delivered to the plaintiff's auditors. The withdrawals not appearing on the book were made by Hull either in cash or by checks of the defendant signed by him as assistant treasurer and made payable to himself, the plaintiff or one of two banks other than the defendant, in one of which the plaintiff carried a commercial account. Hull placed in the defendant's files, to represent these withdrawals, receipts signed in the name of the plaintiff by himself as treasurer. His purpose in making the withdrawals as he did was to cover misappropriation of moneys to his own use. While the last finding is attacked in the assignments of error, it was a reasonable inference which the trial court might properly draw from all the facts in evidence. No material change can be made in the finding.

When Hull took from the defendant's bank cash representing withdrawals or when checks of the bank representing withdrawals were paid by it, if Hull had the authority as an officer of the plaintiff to make them and if they were not improper in view of the purpose

and manner in which they were made, the indebtedness of the defendant to the plaintiff was pro tanto discharged; but if Hull lacked authority to make the withdrawals or they were improperly made the bank, in the absence of ratification or estoppel, remained liable to pay the plaintiff their amount. *Graham* v. *Southington Bank & Trust Co.*, 99 Conn. 494, 502, 121 Atl. 812; *Goodwin* v. *American National Bank*, 48 Conn. 550; *Town of East Hartford* v. *The American National Bank*, 49 Conn. 539; *Eaves* v. *People's Savings Bank*, 27 Conn. 229.

There is nothing in the facts proven upon which to base a conclusion that the defendant is chargeable with knowledge of Hull's fraudulent purpose except as that might be imputed to it from his position as its assistant treasurer handling the transactions. The general rule is that knowledge of an agent will not ordinarily be imputed to his principal where the agent is acting adversely to the latter's interest. *Resnik* v. *Morganstern*, 100 Conn. 38, 42, 122 Atl. 910; *MacKay* v. *Aetna Life Ins. Co.*, 118 Conn. 538, 549, 173 Atl. 783. Whether Hull in fact intended to misappropriate funds of the bank rather than those of the plaintiff does not matter. Had the bank known of his purpose, he could not have effectuated it. He had every incentive to conceal from it his fraudulent scheme, and his interests were adverse to it within the rule we have stated. There is, however, a situation where that rule is not given effect, even though the agent is acting adversely to the principal. We have had a number of cases where, as in the situation before us, the same person was acting as agent for two principals and sought to benefit himself illegally in a way to affect their interests; and from these cases the rule is deducible that if either party knowingly receives and retains a benefit from the transaction

which is tainted with fraud he cannot claim that benefit and disavow knowledge of the fraud; but, on the other hand, if a party receives no benefit from the transaction, he will not be charged with knowledge of the fraud. *Bank of New Milford* v. *Town of New Milford,* 36 Conn. 93, 101; *Fairfield* v. *Southport National Bank,* 80 Conn. 92, 101, 67 Atl. 471; *Davis-Scofield Co.* v. *Agricultural Ins. Co.,* 109 Conn. 673, 682, 145 Atl. 38; *First National Bank & Trust Co.* v. *Manning,* 116 Conn. 335, 339, 164 Atl. 881; and see Restatement, 1 Agency, § 282 (2) (c), and comment and illustrations pp. 629, 630, one of the latter of which, 11, was apparently based on *Bank of New Milford* v. *Town of New Milford,* supra; *Maryland Casualty Co.* v. *Queenan,* 89 Fed. (2d) 155, 157; *Tremont Trust Co.* v. *Noyes,* 246 Mass. 197, 207, 141 N. E. 93; *Orchard Co.* v. *Bank,* 99 W. Va. 438, 129 S. E. 474; note, 111 A. L. R. 665.

The case of *Lowndes* v. *City National Bank,* 82 Conn. 8, 72 Atl. 150, is not at variance with this principle. One Layton was cashier and managing officer of the bank, financial director of a foundry company whose credit he was personally interested in supporting and administrator of an estate the funds of which he deposited in its name in the defendant bank. By means of checks on this account payable to and indorsed by him as cashier, he used its funds to take up worthless checks and notes of the foundry company which the tellers of the bank, under instructions from him, had paid, and carried on the books of the bank as cash items. Administrators of the estate subsequently appointed brought an action to recover the moneys so used and we sustained a judgment in their favor. There were circumstances present in that case which might serve to differentiate it from the one before us, as, for instance, that not only Layton but also

tellers of the bank knew all the facts, and the latter were not participants in the fraud. But that aside, the situation was that the bank had expended funds of its own in taking up the worthless checks and notes; its coffers were replenished from the funds of the estate; and when sued by the administrators it sought to avoid payment of funds which had been used for its own benefit. We said (p. 13): "The trial court was quite right, therefore, in holding that these attempted transactions would result in a benefit to the bank and a corresponding injury to the estate whose funds were in its keeping, and in further holding that such being their character equity and good conscience would not permit them to be carried into effect so that the defendant could receive and retain the fruits of them. *Fairfield* v. *Southport National Bank,* 80 Conn. 92, 102, 67 Atl. 471; *Northrop* v. *Graves,* 19 Conn. 548, 555. The defendant had knowledge of all that its teller and bookkeeper knew and that was all the facts of the situation. . . . The acceptance of the checks as authority for the transfer to the general assets of the bank from the deposit funds of the estate of the amount represented by them, and the attempt to carry that transfer into effect, was therefore to make it a partaker in the fruits of a known fraud, and that too, the fraud of its own agent. This the most elemental principles of the law forbid, and there is no need, in sustaining the action of the trial court in rendering a judgment covering these items, to resort to any imputation to the bank of knowledge by reason of such knowledge being possessed by Layton, or to any constructive knowledge on its part by reason of the negligence of the directors in their oversight of the affairs of the bank, which the court has found, or to the principle stated in *Fairfield* v. *Southport National Bank,* 80 Conn. 92, 103, 67 Atl. 471, that

'when an agent . . . accepts on his principal's behalf money belonging to and fraudulently obtained from another with knowledge of the fraud, that principal, in treating this money as his own and retaining it as against the true owner, cannot claim as his own the act by which the money was accepted, without also admitting as his own the knowledge with which the act was done,' that 'he cannot receive the benefit of the fraud and reject the resulting duty.' "

In the case before us the defendant has received no benefit growing out of the fraudulent transaction, but is merely resisting a demand that it pay to the plaintiff sums representing those which Hull had already withdrawn. The defendant is not charged with the knowledge which Hull had as to the fraudulent scheme upon which he was engaged.

We may, then, leave out of consideration, in determining the defendant's liability in this action, any question as to the effect of Hull's fraudulent purpose. It remains to inquire whether, in making the withdrawals as he did, Hull acted beyond the scope of his authority. A by-law of the bank, printed in the deposit book, provided as follows:

"All deposits shall be entered on the Treasurer's Books, and on a deposit book to be given to each depositor, in which shall be also printed this By-Law. Each depositor, on his first deposit, shall by this act be considered to assent to and be bound by this By-Law.

"No payment shall be made except to the depositor or upon his written order, nor except upon presentation of his deposit book, that the payment may be entered therein.

"The deposit book shall be the voucher of the depositor, and possession of the deposit book shall be sufficient authority to the Society to warrant any

payment made and entered in it, and any payment to a person producing a deposit book issued by this Society shall be a valid payment to discharge the Society."

These provisions became a part of the contract between the plaintiff and the defendant with reference to the deposit, and, in the absence of some further agreement or waiver, the bank could not properly pay out any part of the deposit except in accordance with them. *Chase* v. *Waterbury Savings Bank*, 77 Conn. 295, 300, 59 Atl. 37; *Dinini* v. *Mechanics Savings Bank*, 85 Conn. 225, 228, 82 Atl. 580. They were for the protection of the bank and of the depositor but the two could, by joint agreement or action, waive compliance with them. *Candee* v. *Connecticut Savings Bank*, 81 Conn. 372, 377, 71 Atl. 551; *Wood* v. *Connecticut Savings Bank*, 87 Conn. 341, 347, 87 Atl. 983.

The directors of the plaintiff met once a year to hear and approve the treasurer's report, elect a secretary and treasurer, appoint an auditor, provide for compensation for these officers and vote to indorse premiums on outstanding policies. There is no basis for any claim that Hull was held out as possessing any apparent or ostensible authority; *Zazzaro* v. *Universal Motors, Inc.*, 124 Conn. 105, 110, 197 Atl. 884; and in its dealings with the plaintiff, the defendant was bound by the limits of the authority which Hull in fact had. *Adams* v. *Herald Publishing Co.*, 82 Conn. 448, 451, 74 Atl. 755. But Hull, as secretary and treasurer of the plaintiff, was its sole executive officer, in full charge and custody of all its records and assets, and transacted all its business with other persons. As such treasurer he made and indorsed checks, gave receipts and policies for premiums credited and made deposits and withdrawals in the savings bank.

Under these findings "in legal contemplation he was the corporation." *Lewis* v. *Hartford Silk Manf. Co.,* 56 Conn. 25, 38, 12 Atl. 637. As such, he had the "power *prima facie* to do any act which the directors or trustees of the corporation could authorize or ratify"; *Sun Printing & Publishing Association* v. *Moore,* 183 U. S. 642, 651, 22 Sup. Ct. 240; *Oakes* v. *C. W. Co.,* 143 N. Y. 430, 436, 38 N. E. 461; at least as regards the conduct of its ordinary business dealings; 2 Fletcher, Cyclopedia of Corporations (Perm. Ed.), p. 612; and see *Ackerson* v. *Jennings Co.,* 107 Conn. 393, 397, 140 Atl. 760. There can be no question that it was within his authority to draw funds from the defendant bank and to that power the waiving of the by-law requiring presentation of the deposit book and the signing of an order was but an incident. Had he not been connected with the defendant bank but, representing the plaintiff, had been permitted by the bank to withdraw the money from the account without presenting the deposit book, there would be no question that the requirement that it be presented was waived and the withdrawal would have pro tanto discharged the indebtedness of the defendant to the plaintiff. It can make no difference that he occupied, as both knew, the dual position of an officer of each. *Brown & Brothers* v. *Brown,* 58 Conn. 90, 19 Atl. 236; 1 Mechem, Agency, § 178. While the defendant did not expressly plead a waiver of the requirements of the by-laws, it did allege that the deposit book was not presented but that, in lieu thereof, the defendant accepted the receipts signed by Hull as treasurer of the plaintiff, and this pleading in effect asserted a claim of waiver. The defendant was not bound to see to it that the money withdrawn was properly used. *Lowndes* v. *City National Bank,* supra, 19.

We have not overlooked the decision in *Chase* v.

*Bank,* 88 N. H. 275, 188 Atl. 1. In that case one Douglas was trustee of a fund and assistant cashier of the savings department of the defendant bank. He deposited the fund in a trust account in that department. A rule of the bank, printed in its passbooks, provided that a book must be presented in order to withdraw money. Thereafter Douglas made withdrawals without entering them in the passbook representing the fund, and embezzled the money. While the decision followed somewhat broader lines, its real basis was that Douglas as trustee had no power to waive the requirements of the rule, and that, therefore, the money had not been properly withdrawn. We have no occasion to consider whether we would reach a like result if, in the present case, the deposit had been made by Hull as trustee of a fund. Holding the position he did, as secretary and treasurer of the plaintiff, he had authority to waive the requirements of its by-law providing that withdrawals could be made only on presentation of the deposit book and a written order.

There is no need to consider the other errors claimed.

There is error, the judgment is set aside and the case is remanded with direction to enter judgment for the plaintiff for the amount due to it after crediting withdrawals made by Hull but not entered on the plaintiff's deposit book.

In this opinion the other judges concurred.