JOHN DININI vs. THE MECHANICS SAVINGS BANK OF WINSTED.

First Judicial District, Hartford, January Term, 1912.

HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, JS.

A depositor in a savings-bank, by accepting and using a deposit-book with the by-laws printed in it, is presumed to know their contents, and impliedly contracts to make his deposits according to their terms.

The fact that the depositor is a foreigner, unfamiliar with our laws and language, does not control the presumption that he has knowledge of the rules of the bank as printed in his deposit-book.

A rule of a bank printed in its pass-book, relieving it from liability for the consequences of fraud practiced upon it by means of forged signatures, does not relieve the bank from the duty of exercising reasonable care to prevent payment to the wrong person.

Where a bank adopts a system generally recognized as a reasonably safe method to aid in the identification of its depositors, and employs an experienced and competent clerk, it is not liable in the case of payment to the wrong person, there being no circumstances of suspicion, and the tests of identity (e. g., comparison of signatures) being properly applied according to the system thus adopted.

When a question of liability in an action of negligence depends solely upon the inquiry whether one acted as a reasonably prudent man should act, the question of negligence is one of fact.

The finding of the trial court upon such question of fact will not be reviewed unless it appears that some principle of law has been violated, either in defining the legal duties of the parties, or in deducing the ultimate fact from the subordinate facts found.

Argued January 2d—decided March 7th, 1912.

ACTION to recover the balance of a deposit made by the plaintiff in the defendant bank, brought to and tried by the Court of Common Pleas in Litchfield County, *Welch, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff. *No error.*

*Richard T. Higgins,* for the appellant (plaintiff).

*Samuel A. Herman*, for the appellee (defendant).

RORABACK, J. It appears from the finding that in
May, 1910, the plaintiff was an Italian, who could
speak and understand but little English. At this time,
the defendant was a savings-bank, with nearly thirty-
nine hundred depositors, of which about one hun-
dred were of the same nationality as the plaintiff. On
May 16th, 1910, the plaintiff sent $200 to the defendant
by Mrs. Anna Cordano, who deposited this money with
the bank for the plaintiff. A deposit-book for $200
was issued by the bank in the plaintiff's name, which,
with an identification card made out by the clerk of
the bank, was taken by Mrs. Cordano to the plaintiff.
Dinini signed his name in the blank space left for that
purpose upon the identification card, and returned it
to the bank. The plaintiff gave the bank-book for
safe-keeping to his mother, who placed it in her trunk.
July 8th, 1910, the plaintiff drew $75 of his deposit,
and signed and delivered to the defendant his receipt
therefor. The bank-book was again given to the mother,
who placed it in her trunk. Subsequently one John Rim-
ondi stole this book from the trunk, and on Septem-
ber 7th, 1910, he presented the book to the defendant,
representing himself to be the plaintiff, and withdrew
from the bank the sum of $125, being the balance of the
deposit, and surrendered the book to the bank. Rim-
ondi at the same time also signed and delivered to the
defendant a receipt for the money, forging the name
of the plaintiff on the receipt. Rimondi left town soon
after obtaining this money from the defendant, but was
subsequently apprehended, tried, convicted and sen-
tenced to the State prison for his offense.

The $125 was paid to Rimondi by Miss Ella L.
Norton, who was then and for a number of years had
been a clerk in the bank; but it was not paid over until

she had made a comparison of the signatures, and had satisfied herself as to the identity of the person who presented the depositor's book. It had been the practice and custom of the defendant for a number of years to use identification cards, and to make payments and allow withdrawals from deposits without further identification than the signature of the depositor. It did not appear in evidence that any inquiry was made of Rimondi by Miss Norton, or by any other officer of the bank, as to his identification, based upon the information contained on the card, or from any other source. The plaintiff and Rimondi, so far as the evidence shows, have no particular marks of personal resemblance, except that they are both of the same nationality.

The defendant called as handwriting experts Rufus E. Holmes, George S. Rowe, and Frank D. Hallett, all of whom have had extensive experience in banking business and in the examination of signatures and determination as to their genuineness. On their direct examination these witnesses testified that the genuine and the forged signature had, in their opinion, both been written by the same person. On cross-examination, each admitted that there was a dissimilarity in the formation of some of the letters, as also in the spelling of the name; and none of them testified positively that these signatures were written by the same hand.

On the cover of the bank-book, the following words were printed: "Read carefully this book and preserve it. If you lose or mislay it give immediate notice to the bank." Among the by-laws of the bank printed in the depositor's book are the following: "Sec. 5. All deposits shall be entered on the treasurer's book and on a deposit book to be given to each depositor and each depositor on making his first deposit shall by such act be considered as assenting to and bound by all the by-laws and regulations of the bank. . . . Sec. 8.

This corporation will not be responsible to any depositor of money in this institution or to his or her heirs or assigns for any fraud that may be practiced upon any of the officers of this institution by forged signatures or by presenting a depositor's book and drawing money without the knowledge or consent of the owner; and all entries of money paid made on the depositor's book by an officer of this institution shall be deemed good and valid evidence of money paid, and shall exonerate the bank from any liability on account of any fraud practiced in drawing the money of any depositor." There was no evidence that the plaintiff had any knowledge of the by-laws or provisions contained in his book, or that he agreed to be bound by the same, other than may be presumed by the exhibits referred to and the facts herein stated.

The substance of the important questions raised by the plaintiff's appeal are (1) whether, from the facts found, the plaintiff assented to and was bound by the defendant's by-laws; (2) whether it appears that the defendant exercised reasonable care in the payment of the balance of $125 due upon the plaintiff's book.

The plaintiff, by accepting from the bank and using, as he did, the deposit book in question, with the by-laws printed therein, is presumed to know their contents, and impliedly contracts to make his deposits according to their terms.. *Chase* v. *Waterbury Savings Bank*, 77 Conn. 295, 299, 300, 59 Atl. 37; *Donlan* v. *Provident Institution for Savings*, 127 Mass. 183. Counsel for the plaintiff, in his brief and in his argument, contended that his client was a foreigner, unfamiliar with our laws and language, and that the rules of the defendant bank should not be allowed to operate as any defense for the payment of his money to a stranger, without proof that specific notice of such rules had been given him.

Savings-banks are obliged to deal with a large number of depositors, most of whom are strangers to their officers. They are unable to identify their depositors personally, and sometimes there is danger of collusion by the payment of forged orders, apparently genuine, accompanied by the deposit-book. These rules are made for the benefit of the common fund of the bank, in which every depositor has an interest. The fact that the plaintiff in this case was a foreigner, who may have been unfamiliar with our laws and language, does not control the presumption that he had knowledge of the rules of the bank. *Donlan* v. *Provident Institution for Savings*, 127 Mass. 183, 185. But the rules of the bank, printed in its pass-book, relieving it from liability from any fraud practiced upon it in withdrawing money by means of forged signatures, do not relieve the bank from its duty of exercising reasonable care to prevent payments to the wrong person. *Chase* v. *Waterbury Savings Bank*, 77 Conn. 295, 300, 301, 59 Atl. 37.

In the present case, the trial court reached the conclusion that the bank exercised reasonable care in the payment of the $125, and that the money was paid by it in good faith. The pass-book was presented by Rimondi, who falsely impersonated the depositor, and fraudulently signed Dinini's name to the receipt given for the money. This bank had adopted the identification card system, which is generally recognized as a reasonably safe method, to aid in the identification of its depositors, and to prevent false impersonations by forgers and the like. The clerk who paid the money to Rimondi was an experienced one, and was apparently competent to transact that business. She compared the signature upon the receipt given at that time by Rimondi with the signature of Dinini, and was satisfied that the former was genuine. Evidence was also given upon the part of the defendant by three witnesses,

each of whom had had extensive experience in banking business, and in the examination of signatures. These witnesses all testified that these signatures, in their opinion, were written by the same person, although none of them would testify positively that this was the case. There were no circumstances which would naturally have excited the suspicion of the employees of the bank, or which should have led them to take anything more than the ordinary precautions in the payment of the money. The discrepancy in the signatures was not so marked and apparent that it could be readily and easily discovered on examination of them made by persons experienced in that business. The defendant had not been notified of the loss of the bank-book. Rimondi was of the same nationality and sex as Dinini, and both of them were strangers to the officers of the bank. Rimondi came to the bank with the deposit-book in his possession, and that possession was apparently lawful.

When the question of the defendant's liability in an action of negligence depends solely upon the inquiry whether he acted as a reasonably prudent man should act under the special circumstances of the particular case, the conclusions as to the negligent conduct drawn by the trial court is a question of fact. *Fox* v. *Kinney*, 72 Conn. 404, 44 Atl. 745; *Chase* v. *Waterbury Savings Bank*, 77 Conn. 295, 303, 59 Atl. 37.

The trial court has decided that the defendant's conduct in the payment of the money, as tested by the standard of reasonable care, was free from negligence. This decision we cannot review unless it appears that in reaching this conclusion the court below violated some principle of law, either in defining the legal duties of the parties, or in the process of deducing an ultimate fact from the subordinate facts found. *Hourigan* v. *Norwich*, 77 Conn. 358, 369, 59 Atl. 487; *Lawler*

v. *Hartford Street Ry. Co.,* 72 Conn. 74, 43 Atl. 545. These conditions are not present in this case.

There is no error.

In this opinion the other judges concurred.