## MERCANTILE SAVINGS BANK *v.* DAISY APPLER.

*Savings Bank Deposit—Duplicate Pass Book—Issue to Joint Depositor—Violation of Contract—Evidence.*

In an action by one of two joint depositors against a savings bank to recover on account of the deposit, which was payable to the order of either on the production of the pass book, the question whether the bank, having paid out the money to the other depositor without his presenting the pass book, was liable to plaintiff, who had the pass book, depended not on whether the bank used reasonable care and prudence in disbursing the money, but on whether it lived up to its contract obligations with plaintiff.                          pp. 575, 576

By-laws printed in a pass book, providing that no money could be deposited or withdrawn unless the pass book was presented, making this part of the contract between the bank and the depositor, and stating that the depositor's acceptance of the pass book evidenced his consent to these terms, established a contract between the bank and the depositor, which the bank could undertake to change, by paying out the money without the presentation of the pass book, only at its own risk.      p. 575

A bank which, in spite of its contract with depositors that money should be withdrawn only on presentation of the pass book, issued a duplicate book at the request of one of two joint depositors, on his statement that the original book had been lost, and paid out to him the money in the account, without making further inquiry, and without authority from the other depositor, was liable to the latter, who had possession of the original book, and relied on such possession to protect her.
                                            pp. 575-577

The relation between a savings bank and its depositors depends largely on the facts of each particular case.      p. 576

The relation between a savings bank and two joint depositors *held* to be that of debtor and creditor, with the rights of the parties depending upon the terms of the contract between them.
                                            p. 576

The reasonable rules and by-laws of a savings bank become, when assented to by the depositor, part of the contract between them, and the depositor has a right to rely on these rules and by-laws.                                            p. 576

A provision of the by-laws of a savings bank, requiring the production of the pass book when deposits or withdrawals are to be made, is reasonable and enforceable by the courts.        p. 577

The erroneous admission of testimony is not the subject of review if subsequently the witness makes a similar statement without objection.                                            p. 578

The admission on direct examination of testimony by plaintiff, which would have been more properly admissible in rebuttal had defendant offered certain evidence, *held* harmless, even though defendant did not offer such evidence.              p. 578

On an issue as to a savings bank's justification for issuing a duplicate pass book to one of two joint depositors and paying him money from the account, on his assertion that the original pass book was lost, an officer of the bank, having stated that it was customary to issue a duplicate book where the original was lost, and the people known, could properly be asked, on cross-examination, whether it was not the custom, when one of two joint depositors stated that a book was lost, to require both depositors to sign an order.                          pp. 578, 579

*Decided December 3rd, 1926.*

Appeal from the Court of Common Pleas of Baltimore City (STUMP, J.).

Action by Daisy Appler against the Mercantile Savings Bank of Baltimore City. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*W. E. Byrd,* for the appellant.

*Washington Bowie, Jr.,* for the appellee.

WALSH, J., delivered the opinion of the Court.

This case involves the right of a savings bank to issue to one joint depositor a new pass book on his representation that the original book had been lost, and to subsequently pay to him the money in the joint account, when, as a matter of fact, the original pass book had all along been in the possession of the other joint owner, who later presented it and demanded payment of the deposit.

The practically undisputed facts show that in June, 1920, Daisy Appler, the plaintiff below and the appellee here, went with her husband, Samuel Q. Appler, to the Mercantile Savings Bank of Baltimore City, the appellant, and deposited eight hundred and fifty dollars in an account which was opened in the name of "Daisy Appler in trust for herself and Samuel Q. Appler, joint owners, subject to the order of either, the balance at the death of either to belong to the survivor." The pass book which was issued by the bank at the time the deposit was made contained the following provisions:

"Regulations of the Bank According to the By-Laws.

"Pass books must be brought or sent to the bank every time a deposit or a withdrawal is made and all deposits and withdrawals must be entered in said pass book. Withdrawals may be made upon orders approved by the bank when accompanied by the pass book.

"Deposits shall be subject to a withdrawal after an expiration of ninety days from the time when a notice of a withdrawal shall be given to the bank in writing. These rules and regulations are hereby declared to be a contract between the bank and the depositor. And the acceptance of this book shall be deemed sufficient evidence of the depositor's consent thereto, but this notice may be dispensed with at the discretion of the president, vice-president or treasurer and the same paid on demand.

"Depositors shall notify the bank promptly in case of loss of pass book, but all payments which may be made by the bank to any person presenting the book

of a depositor shall be valid as against the depositor and a full and effectual release therefor to the bank."

This pass book was given to Mrs. Appler and was retained by her continuously from that time until this suit was brought in January, 1925. In September, 1920, Mr. Appler was seriously injured in an automobile accident, and during his illness Mrs. Appler withdrew various sums from the bank, so that on July 1st, 1922, the balance remaining in the account amounted to $311.30. Early in the following year, Mr. and Mrs. Appler became estranged, and since that time they have not lived together. In March, 1923, Mr. Appler went to the bank, stated he had been in a serious automobile accident, and since then had been unable to find his pass book. Thereupon, the bank gave him a duplicate book for the account opened by his wife, he deposited ten dollars in it that same day, and then made various withdrawals, beginning with eighty on April 3rd, 1923, and concluding with five dollars on May 12th, 1923, which last withdrawal closed the account. Notice of the closing of the account was sent to Mrs. Appler shortly afterwards, this being in accordance with the bank's practice, but she testified that she paid no attention to this notice, "because she thought nobody could draw her money without her bank book." In July, 1923, she went to the bank with the original pass book and, when she attempted to cash a check, she was advised verbally that Mr. Appler had withdrawn all the money. It further appeared that she had received no notice from the bank or Mr. Appler that the latter was withdrawing her money, that she understood from the time she received the pass book in 1920 that the money could only be withdrawn on presentation of the book, and that she had purposely kept the book in her possession ever since that time to prevent any one else from withdrawing the money. And finally the evidence shows that Mr. Appler had been a customer of the appellant for a number of years, and had maintained an account there in his own name, in trust for himself and his wife as joint owners, with the right of survivorship. The bank declined to pay any money to Mrs.

Appler when she presented her book, whereupon she brought this suit, claiming the balance of $311.30, with interest from July 1st, 1922, and the verdict and judgment being in her favor the bank has appealed.

There are six assignments of error, the first five relating to questions of evidence and the sixth being taken to the rulings of the learned court below on the prayers. The real question in the case is presented by the court's refusal to grant the defendant's third prayer, which sought to have the jury instructed that "if they shall find from the evidence that the defendant has disbursed all of the money deposited with it in Account No. 11691 (the same being the savings account referred to in the evidence of this case) and shall further find from the evidence that the defendant used reasonable care and prudence in properly disbursing said money, then their verdict should be for the defendant." We think this instruction was properly refused. The question at issue was not whether the bank "used reasonable care and prudence" in disbursing the money, but whether it lived up to its contract obligations with the appellee. According to the rules and by-laws printed in the pass book, no money could be either deposited or withdrawn unless the pass book was presented, and according to these same rules and by-laws this provision was made part of the contract between the bank and the depositor, and the latter's acceptance of the book was made evidence of his consent to the terms of the contract. And it was further provided that the bank could pay the money out to any one who presented the pass book, whether that person was the actual depositor or owner or not. This clearly established a contract between the bank and the depositor, and when the bank undertook to change the terms of this contract we think it did so at its own risk. When the appellee, accompanied by her husband, made her original deposit and received the pass book, she certainly had a right to rely on the express written terms which she found in the book. She testified without contradiction that she did rely on these terms, and that in pursuance of them she carefully hid and kept possession of the pass book, so that no one else

would be able to present it and withdraw the deposit. There is not the slightest intimation of any carelessness on her part, no evidence that her husband, prior to their estrangement or at any other time, ever had possession of the book, no sign of any authorization from her to him, and nothing whatever in the record under which she could be held estopped to question the bank's action in paying the money to her husband. On the other hand the bank, despite its rule that the original pass book must be presented, accepted Mr. Appler's unsupported statment that the book had been lost, gave him a new book, and then within a period of about six weeks permitted him to draw out all the money in the account. And it did this without making any attempt to inquire of the person in whose name the account was opened whether the book was lost or not, and without any writing or other evidence of any sort to indicate that this person had authorized or even knew of the withdrawals her husband was making. There might be cases in which, because of some conduct on the part of the person holding the original pass book, or some course of dealing in which that person acquiesced, the question of the bank's exercise of reasonable care and prudence in disbursing the money would be proper to submit to the jury under appropriate instructions, but we do not think there was any such question under the facts in this case.

There is some discussion among the authorities as to the relation which exists between a savings bank and its depositors, and it seems to be generally held that the determination of that question depends largely on the facts of each particular case. 7 C. J. 863. Applying that rule to this case, it seems to be obvious that the relation here was simply that of debtor and creditor, and that the rights of the parties depended upon the terms of the contract between them. *Ladd v. Androscoggin County Sav. Bank,* 96 Me. 520; *Schippers v. Kemphes,* 67 Atl. 1042 (aff. 72 N. J. Eq. 948, 73 Atl. 1118). And it is universally held that reasonable rules and by-laws of a savings bank become, when assented to by the depositor, part of the contract between them, and the depositor has a right to rely on these rules and by-laws. *People's*

*Sav. Bank v. Cupps,* 91 Pa. 315; *Allen v. Williamsport Sav. Bank,* 69 N. Y. 314, 321; *Ackenhanson v. People's Sav. Bank,* 110 Mich. 175; *Brown v. Merrimack River Sav. Bank,* 67 N. H. 549; *Cosgrove v. Provident Sav. Inst.,* 64 N. J. L. 653; *Dinini v. Mechanics Sav. Bank,* 85 Conn. 225. And a provision requiring the production of the pass book when deposits or withdrawals are to be made is quite customary, and has frequently been held reasonable and enforceable by the courts. *Rosenthal v. Dollar Sav. Bank,* 113 N. Y. Supp. 787; *Whalen v. Millholland,* 89 Md. 199; *Mathias v. Fowler,* 124 Md. 655; *Frentz v. Schwarze,* 122 Md. 12-17; *Conser v. Snowden,* 54 Md. 175; 7 *C. J.* 867. The foregoing authorities make it abundantly clear that under the evidence contained in the record we are considering there was no error in rejecting the defendant's third prayer. Nor was there any error in the rejection of its first, second and fourth prayers, all of which asked for a directed verdict for the defendant. What we have already said also disposes of the objections to the plaintiff's prayers. They presented fairly to the jury what we think is the law applicable to the facts before us, and we find no error in the court's action in granting them.

The appellant relied largely on the case of *Brooks v. Erie County Savings Bank,* 154 N. Y. Supp. 692, decided by a vote of three to two in the Supreme Court and affirmed *per curiam* in 224 N. Y. 639, in which case the bank was held entitled to waive the production of the pass book for a joint account, and it was also held that, in the absence of some knowledge or notice sufficient to put it on inquiry that the husband was not entitled to withdraw the money, the bank was justified in paying it to him. We think it sufficient to say that the facts in that case are so clearly distinguishable from the facts in the one we are considering that it cannot be considered in point. One important difference is the presence in the New York case of a by-law expressly authorizing the bank, under certain circumstances, to waive the production of the pass book, and there are other differences. But

even if there were no differences in the facts, and the reasoning of the New York court was clearly applicable, we would not feel at liberty to adopt it in the present case. Nor do we think that section 76 of article 11 of the Code of 1924, mentioned in appellant's brief, has, in view of the provisions in the pass book requiring its production when money is withdrawn, any application to the case now before us.

This brings us to a consideration of the exceptions taken to the rulings on evidence, of which there are five.

The first was taken to the court's action in permitting Mrs. Appler to testify that the money which she deposited was her own. There are various reasons why this testimony was probably admissible, but even if it was not, the appellant cannot complain of it, because Mrs. Appler later stated the same thing without objection on the part of the appellant. Permitting Mrs. Appler to state that she had never given Mr. Appler the pass book, and had never signed any order authorizing him to withdraw the money, constitute the subjects of the second and third exceptions. Perhaps, strictly speaking, neither of these questions should have been asked on Mrs. Appler's direct examination. However, as they would clearly have been proper in rebuttal if Mr. Appler had contended that she did give him the book, or authorized him in writing to withdraw the money, their asking seems to have been merely an anticipation of a probable defense. It is true Mr. Appler did not claim either of these things, but at most that only made the testimony immaterial, and certainly it could not have injured the appellant. The ruling covered by the fourth exception is conceded to be correct in the appellant's brief, and as we agree with the appellant on this point we will not further consider it.

When Mr. Ramsay, secretary of the appellant, was on cross-examination, he was asked: "Is it not the custom in savings banks, including your own, that when one of two joint depositors states a book is lost, to require both of the joint depositors to sign an order transferring or making a new account"? to which question he answered, "That is the

custom, yes, sir," and the action of the court in requiring him to answer this question constitutes the subject of the fifth exception. We see no error in this. The witness had previously stated on his direct examination that it was customary to issue a duplicate book where the original was lost, and the people known, and the appellee certainly had a right to inquire what else, if anything, was ordinarily done before a duplicate pass book was issued.

Finding no error, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*