JONES, Administratrix *v.* HAMILTON, Administratrix

[No. 32, October Term, 1956.]

372

*Decided December 10, 1956.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Ross G. Porter* with whom were *Woodrow H. Shriver* and *Porter & Shriver* on the brief, for appellant.

*Ralph W. Powers,* for appellee.

HAMMOND, J., delivered the opinion of the Court.

The personal representatives of a husband appeal from a decree awarding a fund put in court on interpleader by a Federal Savings and Loan Association, that had been in the joint names of the husband and wife, to personal representatives of the wife.

On September 10, 1954, there was deposited in the First Federal Savings and Loan Association of Laurel $10,000 in an account in the names of Sammie C. Elam and Sarah F. Elam, his wife. A savings account book was given to the depositors, bearing their names, the account number and the deposit. The savings account book on the outside cover bore the legend "Always bring this book with you"; each inside page contained the warning "Always bring or mail this book with each transaction"; and on the last page was the admonition "This book must accompany all transactions".

On March 22, 1955, there was delivered to the Savings and Loan Association a signature card signed by Sammie C. Elam and Sarah F. Elam, which under the heading "Joint Savings Account" bore the following legend: "The undersigned hereby apply for a savings account in the FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF LAUREL, LAUREL, MD. in the joint names of the undersigned as joint tenants, with the right of survivorship, and not as tenants in common. Specimens of the signatures of the undersigned are shown below and the Association is hereby authorized to act without further inquiry in accordance with writings bearing either such signature; it being understood and agreed that any one of the undersigned who shall first act shall have power to act in all matters related to the membership and any account in said Association held by the undersigned, whether the other person or persons named in the account be living or not. The withdrawal or redemption value of any such account or other rights relating thereto may be paid or delivered in whole or in part to any one of the undersigned, who shall first act, and such payment or delivery or a receipt or acquittance signed by any one of the undersigned shall be a valid and sufficient release and discharge of said Association."

Sometime before June 13, 1955, Sammie C. Elam notified the Savings and Loan Association that none of the funds in the account should be released to his wife, Sarah F. Elam, because there was pending litigation looking to a separation or divorce, and that the account should be kept intact until the outcome of the litigation. On June 13, 1955, Mrs. Elam presented the book and made demand for the payment to her of the amount on deposit. A few days later, Mrs. Elam died intestate. Sammie C. Elam then demanded that the Association pay him the funds as survivor. The Association, having paid neither the wife nor the husband after notice of their marital differences and litigation between them, filed a bill of interpleader, praying that Sammie C. Elam, on the one hand, and the personal representatives of Sarah F. Elam, on the other, be brought into court to "interplead and adjust their several demands and claims between themselves", the Association saying that it was willing that the amount in the account "should be paid to such party as shall be entitled thereto." Sammie C. Elam answered the bill of interpleader and claimed the fund as the surviving depositor. Shortly thereafter, he was shot and killed, and his administratrix reiterated in her answer the claim that he took by survivorship. The answer of the administratrix of Sarah F. Elam claimed the money because "her intestate duly presented the account passbook at said Association's office, during business hours, to an officer or duly authorized agent of said Association and demanded that payment be made to her of the funds on deposit as aforesaid, which payment was refused."

Each side made a motion for a summary decree and the case was submitted on stipulation of the parties that the facts set forth in the original bill of interpleader, the material parts of which we have recited, were to be taken as true, that the savings account book and the copies of the signature card and by-laws of the Savings and Loan Association be considered as evidence and, finally, that at the time Sarah F. Elam presented the book to the Association and made demand for the funds on deposit, the Association refused payment thereof, "and its Secretary-Treasurer stated that there was a domestic controversy between the parties of which they were

on notice." The only parts of the charter and by-laws which might be material to the question at issue are: Sec. 6 of the charter, which provides that "Upon receipt of a written request from any holder of a savings account of the association for the withdrawal from such account of all or any part of the withdrawal value thereof the association shall within 30 days pay the amount requested"; and paragraph 9 of the by-laws, providing that there shall be delivered "to each person upon the initial payment on his savings account in the association an account book or other written evidence of such account."

The chancellor held that the possessor of the passbook was entitled to draw the money upon presentation of the book and demand on the Association, and that payment having been wrongfully refused when "the Association was under legal obligation to pay", this conduct "created a chose in action in favor of Mrs. Elam against the bank." On this finding, the decree awarded the fund to the wife's estate.

Appellant urges upon us that there was a valid joint tenancy in the bank account, that none of the unities of such a tenancy had been severed at the time of Mrs. Elam's death, and that therefore Mr. Elam was entitled to the fund as the survivor. Appellant goes further and says that even if Mrs. Elam's demand be considered the equivalent of delivery of the fund to her, as the chancellor treated it, nevertheless, Mr. Elam's right of survivorship was not defeated. Reliance is placed on out-of-state cases following what might be called the New York rule. New York courts hold that where one joint tenant withdraws all of the money in a joint bank account and redeposits it in his or her own name, or otherwise appropriates it, co-tenancy is not thereby terminated and the interest of each depositor remains as it was in actuality within the terms and limits of the joint tenancy when the funds stood to their joint account. See *O'Connor v. Dunnigan*, 143 N. Y. S. 373, affirmed without opinion by the Court of Appeals of New York, 107 N. E. 1082; *State v. Gralewski's Estate* (Ore.), 159 P. 2d 211, and cases cited therein. There are New Jersey and Massachusetts cases that take the view that withdrawal of the funds by one joint tenant severs the tenancy and makes the owners tenants in common, so that one-half

of the account is held by the withdrawer as agent or trustee of the other party.

We need not consider the effect of these decisions since this Court has decided many cases that have established the Maryland law in the matter of joint accounts.

In *Gorman v. Gorman,* 87 Md. 338, the account was in the name of T and M, her niece, *"joint owners;* payable to the order of either, or the survivor."  T died and M claimed the fund.  It was urged upon the Court that there were three parties to a complete and valid written contract—the Bank and T and M and that the testimony showed that the Bank de-·liberately used this form so there would be survivorship without administration in the Orphans' Court, knowing that this was impossible without joint ownership.  It was claimed that all this was explained to T and M and agreed to by them. The Court said that the money in the account originally belonged to T and answered the contention "that the words 'joint owners' mean exactly what they imply", by saying "But the question before us is not as to the meaning of the word 'owners,' or the words 'joint owners' in themselves and apart from the connection in which they are used in the entry in the bank-book.  And while we may admit that these words have an ascertained legal meaning in themselves, yet we entirely agree * * * that they are not used here in the definite legal sense imputed to them by the appellant."  The Court went on: "And whatever may be the meaning and legal effect of the words 'joint owners' generally, we think it impossible to give them the broad signification claimed for them * * *, and with the controlling fact admitted, that Theresa always held possession of the bank-book. * * * we cannot close our eyes to all the other evidence in this case and give effect alone to *two words* in the entry."

In *Whalen v. Milholland,* 89 Md. 199, 202, 203, the Court said: "But much stress was laid on the words 'joint owners,' which were subsequently stamped on the pass-book.  Of themselves these two words, as we said in *Gorman v. Gorman, supra,* are not sufficient in a deposit made in a Savings Bank, to transfer title to the fund—that is, they are not sufficient to convert the fund from being the property of the person to

whom it belongs into the property of the original owner and another individual. Whatever their technical import may be when employed in other instruments, they cannot operate to vest an ownership to the extent of one-half of the fund in some one else, when, under the terms and according to the legal effect of the very paper in which they are used, the depositor retains such a dominion over the fund deposited that he may at any moment withdraw the whole of it. * * * Always bearing in mind that the fund belonged to only *one* of the parties named as joint owners, and that you are searching for evidence tending to show a gift of that fund, or of a part of it, to a person who confessedly in the first instance owned none of it, the control retained over the *whole* of it by the original owner under the very terms of the deposit which he makes, is of great significance in repelling any inference that he intended to part with his ownership in any way whatever. Particularly is this so when the original owner retains possession of the pass-book and when the deposit is made in a Savings Bank, by the rules of which the book must be produced before the deposit can be withdrawn."

The Court went on to point out that there would be an effective gift of the money on deposit under certain circumstances, saying: "Where, however, it appears that the original owner purposely deposited the fund to his and another's credit as joint owners, retaining the pass-book so as to continue his dominion over the money; a distinct, unequivocal delivery of the book to the other person named as co-owner, with the intention to part with the ownership and to make an irrevocable gift of the fund and an acceptance of it by the donee, would pass the whole interest therein to the donee, because there would then be no inconsistency between the legal effect of the entry on the book, and the right in which the donee of the book could claim the deposit, and there would no longer be a *locus penitentiae* in the original owner. Every element of a perfected gift would then be present."

It was noted, however, that if the intent was to make the purported donee of the book an agent, and delivery of the book was to him in his capacity as agent, the result would be otherwise because title to the deposit would not pass.

The second *Milholland* case, which is found in 89 Md. 212, under the title of *Milholland v. Whalen,* immediately following the first *Milholland* case, just discussed, crystallized the law on savings bank deposits and marked the roadway for the future. It was reiterated that a valid trust of personal property may be created by parol declaration that the declarant holds the property as trustee for another. The Court held that where Miss O'Neill deposited her money in a savings bank "in trust" for herself and her sister, Mrs. Whalen, "joint owners, subject to the order of either; the balance at the death of either to belong to the survivor" and the entry was made at the direction of Miss O'Neill and carried out her intention, the balance on deposit at Miss O'Neill's death passed to Mrs. Whalen as beneficiary of the trust, even though the depositor retained the passbook and made withdrawals from time to time.

Since this decision, most savings accounts have been in the trust form but litigation nevertheless has been abundant. Many decisions of this Court after the *Milholland* case—and occasional decisions before—have made the law to be what the summary in *Bierau v. Bohemian Bldg., etc., Ass'n,* 205 Md. 456, 461-465, from the cases cited therein, says it is: "* * * the usual entry 'A in trust for A and B, joint owners, balance at the death of either to belong to the survivor' is, unexplained, a sufficient declaration of trust, since it indicates an intention to establish the trust, but this may be rebutted. The mere use of the word 'trustee' is not of itself sufficient to create a trust. If there was no intention to create a trust, none will be held to exist no matter what words are used. Yet, if there exists in the mind of the depositor an intent that he or some other shall be trustee and he expresses that intent, although the words 'in trust' or 'trustee' are not used, the intention will prevail and the trust will be declared to have been created. In every case, the real purpose and intention of the donor, and not the particular use of one particular term or another, will decide the question of whether there was a trust.

"A savings bank trust may be created by parol and may be proven by parol. The creator of the trust may reserve the right to withdraw part or all of the deposit at any time, or

from time to time. A withdrawal amounts, in legal contemplation, to no more than the exercise of the power of revocation which will not affect the validity of the trust. The right to withdraw may be given to the trustee-beneficiary and the other beneficiary separately, or jointly, or may be reserved to the creator alone, and there will be no difference in legal result.

"If written evidence is relied on to show the intent to create the trust, its expression may take varied forms and be found in various entries. There may be no entry in the passbook but an appropriate entry on the records of the depository, and this will not be fatal to the validity of the trust. *Sturgis v. Citizens National Bank,* 152 Md. 654. There may be an entry indicating a trust in the passbook but not on the signature card or ledger account. Again, the intention will prevail. *Whittington v. Whittington,* 205 Md. 1, 106 A. 2d 72. If written instructions to the bank show an intention that a trust be created, one will be found and enforced, although the bank had refused to honor the instructions and no entry showing a trust is in the bankbook or the bank records. *Hancock v. Savings Bank of Baltimore,* 199 Md. 163. The trustee may be either the creator-beneficiary or another. * * *

"The fact that the trust form may be used to enable payment of bills or for convenience of withdrawal, may, or may not, as the creator intended in fact, limit the terms of the trust. The power to withdraw for the payment of bills may be the sole purpose of a trust, or may indicate only an agency, or may be merely incidental to the real and broader purposes. In *Ragan v. Kelly,* 180 Md. 324, it was found that the trust was limited to the specific purpose of paying bills, so that it ended with the death of the maker. So, too, in *Coburn v. Shilling,* 138 Md. 177. However, in *Hancock v. Savings Bank of Baltimore, supra,* it was determined that the amount in the account was far more than was necessary for any immediate hospital or doctor bills, and there was a lack of evidence that the transfer was made only for the purpose of paying bills. It was pointed out that the creator of the trust may have wanted the medical and hospital expenses paid out of the account and the beneficiary may have so understood, and the holding was: this does not effect the final disposition

of the account, and the testimony does not indicate any results different from that which are written into the records."

Maryland decisions have concluded that there is no rational basis for drawing a distinction between accounts in savings banks and accounts in savings and loan associations as far as the rights of depositors as between themselves are concerned. *Bierau v. Bohemian Bldg., etc., Ass'n, supra; Wetzel v. Collin,* 170 Md. 383; *Gimbel v. Gimbel,* 148 Md. 182; *Kozlowska v. Napierkowski,* 165 Md. 620. It is not contended, nor have we found anything in the statutes or otherwise to show, that Federal law or regulations issued under it have attempted to prescribe or make valid any forms of account between Federal savings and loan associations and their depositors. This being so, it would seem that the general principles that underlay the decision in *Anderson National Bank v. Luckett,* 321 U. S. 233, 88 L. Ed. 692, that deposits in a national bank, being debtor obligations incurred and to be performed in the state where the bank is located are subject to the law of the state, would apply.

The distillation of the Maryland cases is that in a contest between those claiming as co-owners or as surviving owner of a bank or building association account, the Court has sought to find who was the original owner of the money on deposit, the intention of the owner as to the fund, the mechanics employed to effectuate that intent, and their effectiveness. If the mechanics are adequate to effectuate the intent, the Court will gratify the intent, whether or not the trust form has been used. In the record before us, there is neither agreement nor any evidence as to who owned the money originally. It may have been Mr. Elam's or Mrs. Elam's, or have been contributed jointly, or have resulted from the sale of property owned as tenants by the entireties. (Because it permitted either to withdraw, the account here involved could not have been a tenancy by the entireties; *Brewer v. Bowersox,* 92 Md. 567.) If the money was Mrs. Elam's and she retained the passbook, Mr. Elam would not be entitled to take it as survivor under the decisions in *Gorman v. Gorman* and the first *Milholland* case cited above. If the money was Mr. Elam's, and, after the deposit in the savings and loan association, he had made "a

distinct, unequivocal delivery" of the passbook to Mrs. Elam with the intent to part with ownership and make an irrevocable gift of the fund, and she had accepted it, these facts would support the right of her estate to the account under the first *Milholland* case, 89 Md. 199, 206, *supra*. If the money was originally all Mr. Elam's or belonged in part to each, Mrs. Elam's possession of the account book and her right to withdraw, could have been as agent, or trustee, for purposes mutually agreed on before the deposit, or to be agreed on from time to time. There is nothing in the record to indicate that any trust was actually created, although it is conceivable that evidence could be produced that some trust was intended, despite failure to use the words "trustee" or "in trust". We think the decision in the case must turn on the ownership of the fund and the actual intention of the owner or owners in following the course they did with regard to the creation of the account and the deposit of the money.

Appellant points out that under the terms of the contract governing the deposit, found on the card signed by both Mr. and Mrs. Elam, either could withdraw and that "the Association is hereby authorized to act without further inquiry in accordance with writings bearing either such signature; it being understood and agreed that any one of the undersigned who shall first act shall have power to act in all matters related to the membership and any account in said Association held by the undersigned * * *." She directs our attention also to the fact that Mr. Elam made demand for the money before June 13, 1955, and contends that he should have been paid the fund as the first to act and that, upon payment, would have become the absolute owner. The appellee's counter to this argument is that only the holder of the savings account book was entitled to make withdrawals and that all pertinent parts of the agreement between the depositors and the bank must be read together as one contract. Appellee reads this full contract to mean that the first of the depositors holding the passbook to apply is entitled to act. We think that this is a correct interpretation of the contractual relations of the parties. In *Whalen v. Milholland,* 89 Md. 199, 207, *supra,* the Court emphasizes the fact that "A Savings Bank book has

a peculiar character. It is not a mere pass-book, or the statement of an account; it is issued to the person in whose name the deposit is made, and with whom the bank has made its contract; it is his voucher, and the only security he has, as evidence of his debt. The book is the instrument by which alone the money can be obtained, and its possession is thus some evidence of title in the person presenting it at the bank." In *Savings Bank v. Appler,* 151 Md. 571, 573, the regulations of the bank, found in the by-laws, were that "Pass books must be brought or sent to the bank every time a deposit or a withdrawal is made * * *." The Court said: "And it is universally held that reasonable rules and by-laws of a savings bank become, when assented to by the depositor, part of the contract between them * * *. And a provision requiring the production of the pass book when deposits or withdrawals are to be made is quite customary, and has frequently been held reasonable and enforceable by the courts." In *People's Bank v. Turner,* 169 Md. 430, 432, the record did not disclose the rules or by-laws of the bank as to the passbook, but since the arguments had assumed "* * * that the pass-book was required, as usual", the Court held that presentation of the passbook was essential to entitle a depositor to withdraw funds.

It is to be remembered that in the case before us the only evidence of the deposit and the controlling rules of the bank for the period from September 10, 1954, to March 22, 1955, when the signature card was delivered to the Association, was the savings account book. It distinctly informed the depositors that the rules of the bank required its presentation for deposits or withdrawals. The by-laws of the bank, as we have noted, provided for delivery to a depositor upon the initial deposit of "an account book or other written evidence of such account". A number of cases have held that the rules or regulations printed in a passbook or account book are part of the contract between the bank and the depositor, are binding and that their terms must be complied with. See, for example, *Forbes v. First Camden Nat. Bank & Trust Co.* (N. J. Super.), 95 A. 2d 416; *Royon v. Greenstein* (Ohio), 171 N. E. 595; *Brunswick Corp. v. Northwestern Nat. Bank & Trust Co.* (Minn.), 8 N. W. 2d 333; *Sindlinger v. Depart-*

*ment of Financial Institutions* (Ind.), 199 N. E. 715. See also *Davis v. Chittenden County Trust Co.* (Vt.), 61 A. 2d 553; *Mutual Assur. Co. v. Norwich Sav. Soc.* (Conn.), 24 A. 2d 477, 480.

We assume without deciding that the Association could safely have paid Mrs. Elam the whole amount on deposit upon her presentation of the savings account book on June 13, 1955, by reason of the contract between it and the Elams. Nevertheless when it refused to do so—perhaps not unreasonably after advice of marital discord and litigation, and a warning not to pay out the fund—it cannot be said, we think, that the consequences are the same as if it had. Again assuming without deciding, this is not to say that under the decisions in *Savings Bank v. Appler,* 151 Md. 571, and *People's Bank v. Turner,* 169 Md. 430, both *supra,* the Association could not have been required to pay Mrs. Elam the money if she had sued and her husband had taken no further steps. The chancellor awarded her estate the fund on the theory that when her rightful demand was refused, she became the owner of a chose in action but, as we see it, she was the owner of a chose in action before the demand, just as she was afterwards, because as holder of the savings account book, she was the one entitled to draw the money on demand. In both cases the basic question is, as it still would have been if she had received the money on the day she demanded it, (although it might have had to be answered in a different form of action) —whose money was it originally, and by what right and in what capacity, as between her and her husband, did she withdraw and receive it. The Court said in *Mathias v. Fowler,* 124 Md. 655, 667, in speaking of what is now Code, 1951, Art. 11, Sec. 102, (the right of a bank safely to pay to either of two joint depositors), what we deem applicable and appropriate in relation to the Association's right to have paid Mrs. Elam under its contract with her and her husband: "The bank did not pay the fund in accordance with the terms of that section, and has no interest in this controversy. The only inquiry here is which of the two claimants is entitled to the fund, and the section of the Code referred to does not shed

any light upon that question or determine the rights of the parties. *Gordon v. Toler* [N. J.], 89 Atl. 1020."

Since the record affords no basis for determining the rights of the parties we shall remand the case, pursuant to Code, 1951, Art. 5, Sec. 42, for such amendment of the pleadings and production of evidence as our views on the case make appropriate.

> *Case remanded, without affirmance or reversal, for further proceedings in conformity with the views expressed in the opinion, costs to abide the final result.*