HILEMAN ET AL. *v.* HULVER ET AL.

[No. 366, September Term, 1965.]

*Decided July 21, 1966.*

The cause was argued before HAMMOND, HORNEY, OPPEN-HEIMER, BARNES and McWILLIAMS, JJ.

*John C. Sullivan* for the appellants.

*Wayne C. Hough* for Marjorie Hulver, part of the appellees. No brief and no appearance for Cumberland B. & O. Employees Federal Credit Union, the other appellee.

BARNES, J., delivered the opinion of the Court.

Melvin H. Hileman (Mr. Hileman), a retired Baltimore & Ohio Railroad employee, died in 1964 survived by William C. Hileman, Harvey N. Hileman, Carol Mannick, Dolores A. Twigg, Erma Hovatter, Mrs. Leslie J. Beal and Bonnie Hileman (plaintiffs-appellants), and by Marjorie Hulver (defendant-appellee or Mrs. Hulver). Prior to his death Mr. Hileman

maintained a savings account at the local B & O Credit Union, Cumberland, Maryland in the amount of $937.92. This case presents the issue of whether a valid and effective gift *inter vivos* of Mr. Hileman's savings account was made to Mrs. Hulver. Mr. Hileman's other children maintain that no valid gift was consummated and that they should each therefore be entitled to share with their sister in the proceeds of the savings account.

Mr. Hileman's name appeared on the pass book in account No. 360, and the Credit Union held in their file a signature card with the name of the deceased and that of his daughter, Marjorie Hulver. Mrs. Hulver's name was placed there following the divorce of Mr. Hileman from his former wife, whose name had appeared on the signature card. The signature card was used by an insurance company, Cuna Mutual, which paid benefits to all beneficiaries listed thereon.[1] Cuna Mutual is an affiliate of the Credit Union. The signature card was also used by the Credit Union to indicate to whom the savings account would go upon the death of the employee. No other words were used on the card so as to show a trust arrangement.[2]

Following the change of names on the signature card from Mr. Hileman's former wife to his daughter, and three or four months before his death,[3] he wrote a letter to his daughter explaining what he had done. In November of 1963 Mr. Hileman moved into her home and at that time he gave her the pass book to his savings account and said: "Here, keep it, you will need it." There was no written assignment of the savings

---

1. The appellants make no claim to the $645.61 which are the proceeds of Mr. Hileman's insurance policy with Cuna Mutual.

2. No trust with Mrs. Hulver as beneficiary was created in the savings account. The placing of Mrs. Hulver's name on the signature card would not give her an exclusive right to the deposit at Mr. Hileman's death. A depositor who causes the deposit to be entered in the book of deposit in his name and, in the case of his death, payable to another, does not thereby make a gift inter vivos of the deposit, since he retains the absolute control over the deposit, and its transfer has reference to a future time. Jones v. Crisp, 109 Md. 30, 71 Atl. 515 (1908).

3. Mrs. Hulver does not claim and did not attempt to prove at the trial that Mr. Hileman made a gift *causa mortis* of the savings deposit.

account, nor any notice of transfer given to the Credit Union. Printed on the first page of the pass book was the following provision: "No payment will be accepted or paid out at the office without this pass book. Where payments are forwarded by mail or otherwise, the book should be presented for posting."

Mr. Hileman was admitted to the hospital on December 23, 1963 and he died of cancer on February 13, 1964 at the age of 61. After Mr. Hileman's death Mrs. Hulver, as sole beneficiary of his railroad retirement benefits and insurance, received $4,500.00. This payment was not contested by any of the appellants in any proceeding. On November 16, 1964 Mrs. Hulver presented the pass book to the Credit Union and received their check for $1,583.53 representing $937.92 in the savings account and $645.61 due under the Cuna Mutual insurance policy. The appellants requested a stop payment on the check and filed a petition for declaratory judgment in the Circuit Court for Allegany County. As we have already indicated in this opinion, the appellants do not claim a share with their sister in the Cuna Mutual Insurance proceeds, they maintain only that they should share in the $937.92 which constituted the proceeds of Mr. Hileman's savings account.

The trial court found that Mr. Hileman had made a valid and effectual gift *inter vivos* to his daughter, Marjorie Hulver. We agree with that determination. The principle is well established that every element necessary to establish a valid gift, whether *inter vivos* or *causa mortis,* must be explicitly and convincingly proved, especially where the alleged donee attempts to assert his claim after the putative donor's death, and there is danger that he may be acting fraudulently. See *Schilling v. Waller,* 243 Md. 271, 220 A. 2d 580 (1966); *Garner v. Garner,* 171 Md. 603, 612, 190 Atl. 243 (1937); *Whalen v. Milholland,* 89 Md. 199, 210, 43 Atl. 45, 50 (1899). No fraud, however, is suggested in this case. The appellants admit that Mrs. Hulver was the sole object of Mr. Hileman's bounty. They claim only that there was insufficient delivery to constitute a present gift *inter vivos* of the Credit Union savings account and that Mr. Hileman had intended that Mrs. Hulver would succeed to the fund at his death, and not during his lifetime.

In *Brooks v. Mitchell,* 163 Md. 1, 161 Atl. 261 (1932), after

a thorough review of the Maryland cases our predecessors held that the delivery of a savings account pass book, accompanied by sufficient evidence of donative intent, transferred the right to the deposit represented by that book. It was also held in *Brooks* that so long as there is delivery, the expressions of donative intent may be made by parol and there need be no written assignment, nor notice to and assent of the depository bank. See *Jackson v. Jackson*, 206 Ga. 470, 57 S. E. 2d 602 (1950); *Busteed v. Cambridge Sav. Bank*, 306 Mass. 9, 26 N. E. 2d 983 (1940); *Dellepiane v. Hynes*, 83 Cal. App. 604, 257 Pac. 180 (1927); *In re Antkowskis' Estates*, 286 Ill. App. 184, 3 N. E. 2d 132 (1936); *Speirs v. Spanko, 7* N. J. Super., 421, 71 A. 2d 395 (1950); *Walker v. Eisenberg*, 184 N. E. 2d 465 (Ohio App. 1962). See also 4 *Corbin on Contracts* § 916, pages 670-672 (1951 ed.); Annot., *Gift of savings deposit by delivery of pass book*, 84 A.L.R. 558.

The fact that a donee may wait until after his donor's death to attempt to withdraw the fund given to him will not obviate the effect of a valid gift *inter vivos, Brannan v. Eliot Five Cents Sav. Bank*, 211 Mass. 532, 98 N. E. 572 (1912); *Stacks v. Buten*, 141 Wis. 235, 124 N. W. 403 (1910).

*Brooks v. Mitchell, supra*, dealt with the question of what delivery would be sufficient to make a gift *causa mortis* of a savings deposit. Its rationale, however, may be applied to gifts *inter vivos*. Delivery, to be sufficient, must be the same in both cases. The accompanying expressions of donative intent determine whether the transfer was to be *inter vivos* or *causa mortis*, conditional or unconditional. See *Corbin on Contracts, supra*.

Judge Offutt, speaking for the Court in *Brooks*, said:

> "An indispensable requisite of a gift, whether *mortis causa* or *inter vivos*, is that there be a delivery of the donation [citations omitted], which may be actual or constructive * * *. But in either case its effect must be to completely divest the donor of any dominion or control over it and to transfer such dominion and control to the donee [citations omitted]." 163 Md. at 11, 161 Atl. at 266.

Delivery of the pass book in *Brooks* transferred a present right to the fund which it represented since a provision of the con-

tract of deposit made between the donor and the bank provided that a depositor could not withdraw funds without presentation to the bank of the pass book; thus the requirement was satisfied that "there could be no valid delivery of a gift *mortis causa* unless there was an actual tradition of it, or of some token or evidence thereof, the loss of which completely deprived the donor of any control over it * * *." (163 Md. at 14, 15, 161 Atl. at 267). See also *Pomerantz v. Pomerantz*, 179 Md. 436, 440, 19 A. 2d 713 (1941); *Curley v. Wolf*, 173 Md. 393, 397, 196 Atl. 285 (1938).

It is suggested that in this case the pass book did not control the deposit although the Credit Union by-laws required that the book must be presented before any withdrawal could be made, since a representative of the Credit Union testified that Mr. Hileman would be allowed to withdraw from his account without the pass book because he was known to them.

> "Q. You said the deceased could withdraw the money at any time. Would you not require the presentation of the passbook? A. With him he was well known to us and not necessarily. He would have to sign what we call a journal voucher that he did receive the check.
> "Q. He could withdraw this entire account without the savings book and you would not ask a question where the savings book was? A. We would ask him to bring it in but he would sign a release."

A savings deposit generally creates the relationship of debtor and creditor between a bank and its depositor. The by-laws printed in the pass book, including the rule that the book must be presented before withdrawals may be made, become part of a contract between them. *Savings Bank v. Appler*, 151 Md. 571, 135 Atl. 373 (1926). See *Jones, Adm. v. Hamilton, Adm.*, 211 Md. 371, 382-383, 127 A. 2d 519 (1956); *People's Bank v. Turner*, 169 Md. 430, 433, 182 Atl. 314 (1936). By-laws like those printed in a pass book are upheld as necessary for the protection of banks. *Commonwealth Bank v. Goodman*, 128 Md. 452, 97 Atl. 1005 (1916). The by-laws, however, constituting as they do terms of the contract of deposit between the depositor and the bank, inure also to the benefit of the de-

positor, and a bank which undertakes to alter the terms of the contract "does so at its own risk." *Savings Bank v. Appler, supra,* at 575 of 151 Md. See also *Griffin v. Centreville Sav. Bank,* 93 R. I. 47, 171 A. 2d 204 (1961); *Davis v. Chittenden County Trust Co.,* 115 Vt. 349, 61 A. 2d 553 (1948). Assignees of the savings deposit are bound by the terms of the contract set out in the pass book. *Savings Bank v. Holzer,* 175 Md. 481, 488, 2 A. 2d 639 (1938); *Savings Bank v. Appler, supra.*

In the old case of *Mitchell v. Home Sav. Bank,* 38 Hun. 255 (N. Y. Sup. Ct. 1885), it was indicated that an assignee of a savings deposit who possessed the pass book and read in it the rule against payment without presentation, was entitled to believe that its possession fully secured to him the deposit, although a bank was given no notice of the assignment. There are cases which uphold the right of a savings bank to require in its by-laws that an indemnity bond be tendered to it from depositors who seek to make withdrawals without producing the pass book. This provision protects the bank from the claims of possible assignees of the deposit who may produce the book and demand payment. An indemnity bond could not be required, however, where it was clearly shown that the book had been lost or stolen. See Annot., *Validity, construction, application, and effect of agreement for, or condition of, indemnity to bank in event of payment to savings bank depositor who cannot produce pass book,* 81 A.L.R. 1150.

However, there is also a line of cases holding that since the assignment by gift or otherwise of a savings bank deposit amounts to the assignment of a non-negotiable chose in action, and the law of assignments applies, the assignee, in order to protect himself from the possibility that the debtor-bank may discharge its obligation by payment to the assignor (even where no pass book is produced) must notify the bank of the assignment. The bank may not require that an indemnity bond be tendered before a withdrawal may be made without presentation of the pass book since it will not incur liability to any assignee who had not notified the bank of the assignment. See *United States v. Bowery Savings Bank,* 297 F. 2d 380 (2nd Cir. 1961); *United States v. Manufacturers Trust Co.,* 198

F. 2d 366 (2nd Cir. 1952); *United States v. Buia*, 144 F. Supp. 477 (D. S. D. N. Y. 1956); *Ornbaun v. First Nat. Bank of Cloverdale*, 215 Cal. 72, 8 P. 2d 470 (1932); *Ackenhausen v. People's Savings Bank*, 110 Mich. 175, 68 N. W. 118 (1896); *Myers v. Albany Savings Bank*, 270 A. D. 466, 60 N. Y. S. 2d 477 (1946), aff'd., 296 N. Y. 562, 68 N. E. 2d 866 (1946), reargument den., 296 N. Y. 636, 69 N. E. 2d 484 (1946). See also 8 Michie, *Banks & Banking*, Ch. 16, §19, page 49 (1945 ed.).

In *Wade v. Security Savings & Commercial Bank*, 99 F. 2d 995 (D. C. Cir. 1938) it was held that the assignee by gift of a decedent's savings deposit could not recover in damages from a bank without notice of the assignment which had paid over the fund to the decedent's administrator, who did not produce the pass book when he made his demand to the bank for payment. The decision was rendered without prejudice to the assignee's right to bring a subsequent action against the administrator.

A pass book is evidence of the chose of action for the deposit which is assigned where the book is delivered, accompanied by the requisite expressions of donative intent. See *Brooks v. Mitchell, supra*. According to the *Restatement, Contracts* § 170 (2) (a):

> "(2) Except as stated in Subsection (4) [not here relevant] an obligor is discharged from any duty to the obligee or to any assignee if he obtains for value, by performance or otherwise, a discharge of the duty
>
> "(a) from the obligee or from any holder of an irrevocable assignment, if the obligor neither knows nor has reason to know facts showing that another person than the person giving the discharge has the right to receive performance * * *."

In *Savings Bank v. Appler, supra*, a savings account existed in the joint names of an estranged husband and wife. The bank, despite its rule that no withdrawal could be made without presentation of the pass book, accepted the unsupported statement of the husband that the book was lost. A new book was issued and the fund withdrawn. Our predecessors held that the wife

had a right to assume that the bank would pay only that depositor who presented the pass book; and in light of the fact that the bank knew of the rights of the wife if she possessed the book, it was held that the bank was liable as a matter of law to the wife because of its payment of the fund to the husband. See also *People's Bank v. Turner, supra.* Cf. *Jones, Adm. v. Hamilton, Adm., supra.*

*Restatement, Contracts* §158(1)(b) provides that:

> "(1) The right acquired by the assignee under a gratuitous assignment is terminated by the assignor's death, by a subsequent assignment by the assignor, or by notification from the assignor received by the assignee or by the obligor, unless,
> \* \* \*
> "(b) the assigned right is evidenced by a tangible token or writing, the surrender of which is required by the obligor's contract for its enforcement, and this token or writing is delivered to the assignee; \* \* \*."

The Credit Union has made no payment to anyone involved in this case without presentation of the pass book, therefore we need not determine under what circumstances it would be liable to assignees if it had made such a payment.

Under *normal conditions* the pass book controls the deposit and would be required in order to make withdrawals. In allowing a depositor to make withdrawals without presentation of the pass book the bank does run the risk that it could in some cases be liable to assignees. Transfer of the pass book would be an act inconsistent with the wish to retain ownership of the fund, and a donor's continued dominion and control over the deposit would be made at least awkward and difficult if not always wholly impossible.[4]

---

4. In the English case of Birch & Another v. Treasury Solicitor [1950] 2 All. E. R. 1198 (Ct. of App.) the Court was presented with the same problem which we have in this case. An issue there was whether delivery of the pass books to savings accounts in two banks, accompanied by expressions of donative intent, effected delivery of the deposits which the books represented. Although the by-laws of the bank provided that presentation of the book was

Under the circumstances present in this case where Mr. Hileman had clearly made known his desire that Mrs. Hulver should come into possession of his savings account, a valid gift *inter vivos* was made when she accepted his delivery of the pass book to the account. There is no evidence that Mr. Hileman knew that the Credit Union would have allowed him to make withdrawals without presentation of the pass book and all of Mr. Hileman's prior transactions with the Credit Union were made upon presentation of the book.

> *Judgment affirmed, costs to be paid*
> *by the appellants.*

---

required for there to be a withdrawal, it was established that the banks would waive that requirement on occasion. The English Court of Appeals, declaring the principle obversely to how it is usually stated in the United States, held that there was no evidence that the condition requiring deposit books to be presented before making withdrawals was a "dead letter." The deposit books remained "essential *indicia* of title" to the deposits which they represented and their possession entitled the donee to the money purported to be given. Delivery of the books amounted to a transfer of the accounts.